PRECEDENTIAL – FOR PUBLICATION

## IN THE DISTRICT COURT OF THE VIRGIN ISLANDS
## DIVISION OF ST. CROIX

|  |  |  |
|---|---|---|
| COMMISSIONER OF THE DEPARTMENT OF PLANNING AND NATURAL RESOURCES, ROBERT S. MATHES, IN HIS CAPACITY AS TRUSTEE FOR NATURAL RESOURCES OF THE TERRITORY OF THE UNITED STATES VIRGIN ISLANDS, | ) ) ) ) ) ) ) ) |  |
| Plaintiff, | ) ) |  |
| v. | ) ) | CIVIL NO. 2005/0062 |
| CENTURY ALUMINA COMPANY, VIRGIN ISLANDS ALUMINA COMPANY, ST. CROIX ALUMINA, L.L.C., LOCKHEED MARTIN CORPORATION, ALCOA WORLD ALUMINA, L.L.C., HOVENSA, L.L.C., HESS OIL VIRGIN ISLANDS CORPORATION, ST. CROIX RENAISSANCE GROUP, L.L.L.P., | ) ) ) ) ) ) ) ) ) ) ) |  |
| Defendants. | ) ) |  |

## MEMORANDUM OPINION

Finch, Senior Judge

THIS MATTER comes before the Court on Motions to Dismiss filed by Century Alumina

Company, Virginia Islands Alumina Company (VIALCO), Lockheed Martin Corporation,[1] St.

Croix Renaissance Group, St. Croix Alumina, L.L.C. and Alcoa World Alumina, L.L.C.,[2]

---

[1]  Century Alumina Company, VIALCO, and Lockheed Martin Corporation separately filed identical motions to dismiss and replies.

[2]  St. Croix Alumina, L.L.C. and Alcoa World Alumina, L.L.C. jointly filed a motion to dismiss and reply.

[collectively "the Alumina Defendants"] and HOVENSA, L.L.C. and Hess Oil Virgin Islands

Corporation (HOVIC),[3] [collectively "the Refinery Defendants"].  They move to dismiss the suit

brought by Plaintiff Commissioner of the Department of Planning and Natural Resource (DPNR)

as Trustee for natural resources of the Territory of the Virgin Islands.


I.      **BACKGROUND**

        A.      **The Defendants**

        The Alumina Facility was constructed in 1965.  Martin Marietta Corporation owned and

operated the Alumina Facility from approximately 1972 through May 1989.[4]  Ownership was

then transferred to VIALCO which operated the Alumina Facility from May 1989 to July 1995.

In July 1995, St. Croix Alumina purchased the Alumina Facility from VIALCO and owned and

operated it until June 2002.  The present Alumina Facility owner, St. Croix Renaissance Group,

L.L.L.P., acquired title to the Alumina Facility in June 2002.

        An oil refinery facility (the "Refinery") was built on property located next to the Alumina

Facility around the same time, or shortly after the Alumina Facility was constructed.  From 1967

to 1998, the Refinery was owned and operated by HOVIC.  On October 30, 1998, HOVENSA,

L.L.C. acquired ownership and presently operates the Refinery.


        B.      **The Claims and Arguments for Dismissal**

        The Trustee's claims are based on the Comprehensive Environmental Response,

---

        [3]  HOVENSA, L.L.C. and Hess Oil Virgin Islands Corporation jointly filed a motion to
dismiss and reply.

        [4]  Martin Marietta Corporation, Martin Marietta Aluminum, Inc. and Martin Marietta
Alumina, Inc. merged into Defendant Lockheed Martin in January 1996.  Complaint ¶ 14.

Compensation, and Liability Act (CERCLA),[5] as well as common law claims of strict liability, negligence, negligence per se, public nuisance, and trespass. The Trustee also sues for violations of The Oil Spill Prevention and Control Act, 12 V.I.C. § 701, *et seq.*, and the Territorial Water Pollution Control Act (WPCA). 12 V.I.C. § 181, *et seq.*

Defendants move to dismiss the Trustee's CERCLA claim on the following bases: the Trustee failed to comply with CERCLA's statutory notice requirement; the CERCLA claims are time-barred; the Trustee is seeking damages for petroleum releases which are excluded from CERCLA; and the Trustee failed to allege releases of certain hazardous substances. Defendants challenge the territorial causes of action on the following grounds: the Court should decline to exercise supplemental jurisdiction over the territorial claims; standing to bring the territorial claims is lacking; CERCLA preempts the territorial claims; the territorial claims are time-barred; the essential elements of trespass and public nuisance have not been alleged; and the WPCA does not provide for damages. Finally, Defendants contend that the Complaint should be dismissed for failure to plead in the form required by Rule 10(b) of the Federal Rules of Civil Procedure.

## II.    CERCLA CLAIM

### A.    Notice Requirement

Defendants contend that the Trustee failed to fulfill the notice requirement of section 113(g)(1) of CERCLA, 42 U.S.C. § 9613(g)(1), which requires that a notice of intent to file suit

---

[5]  The official title of CERCLA, also known as Superfund, is the Comprehensive Environmental Response, Compensation, and Liability Act, Pub.L. No. 96-510, 94 Stat. 2767 (1980), as amended by the Superfund Amendments and Reauthorization Act of 1986, Pub.L. No. 99-499, 100 Stat. 1613 (1986) (codified at 42 U.S.C. §§ 9601-9675).

be sent sixty days prior to filing suit for natural resource damages.  The Trustee responds that the notice requirement does not apply in this case.[6]  CERCLA's notice provision provides, in relevant part:

> With respect to any facility listed on the National Priorities List (NPL), any Federal facility identified under section 9620 of this title (relating to Federal facilities), or any vessel or facility at which a remedial action under this chapter is otherwise scheduled, an action for damages under this chapter must be commenced within 3 years after the completion of the remedial action . . . . In no event may an action for damages under this chapter with respect to such a vessel or facility be commenced (I) prior to 60 days after the Federal or State natural resource trustee provides to the President and the potentially responsible party a notice of intent to file suit, . . . .

42 U.S.C.A. § 9613(g)(1).

Thus, the 60-day notice is required only with respect to facilities listed on the National Priorities List, certain federal facilities, and any vessel or facility where a remedial action under CERCLA is scheduled.  Neither the Refinery nor the Alumina Facility falls within the ambit of these three categories.  Therefore, notice is not required under the statute.

**B.      Statute of Limitations – CERCLA Claim**

Defendants move to dismiss the CERCLA claim which has a three year statute of limitations.  42 U.S.C. § 9613(g)(1)(A).  Defendants argue that the Complaint, on its face, demonstrates that the action is time-barred.   In the alternative, they contend that the Court should review various documents that they have attached to their motions in finding that the CERCLA claim is untimely.

"A statute of limitations defense is an affirmative one, and in order to undergird a

---

[6] Defendant St. Croix Renaissance Group concedes this issue in their reply brief.

4

dismissal, must appear on the face of the complaint." Benak ex rel. Alliance Premier Growth Fund v. Alliance Capital Management L.P., 435 F.3d 396, 400 n.14 (3d Cir. 2006). "If the bar is not apparent on the face of the complaint, then it may not afford the basis for a dismissal of the complaint under Rule 12(b)(6)." Robinson v. Johnson, 313 F.3d 128, 135 & n.3 (3d Cir. 2002) (quotation omitted). The Court has thoroughly examined the Complaint and finds that it does not contain sufficient information on its face for the Court to find that the CERCLA claim accrued more than three years before the action was filed.

Defendants accuse the Trustee of deliberately omitting facts that would show that the CERCLA claim is barred by the statute of limitations.   However, complaints do not have to anticipate affirmative defenses to survive a motion to dismiss. See Gomez v. Toledo, 446 U.S. 635, 640 (1980); Thomas v. Independence Tp., 463 F.3d 285, 293-94 (3d Cir. 2006) (stating that there is no "rule of pleading *requiring* a plaintiff to set forth allegations negating an affirmative defense"). Indeed, "[c]omplaints need not contain *any* information about defenses and may not be dismissed for that omission." Xechem, Inc. v. Bristol-Myers Squibb Co., 372 F.3d 899, 901 (7th Cir. 2004). Moreover, "[n]o matter how likely it may seem that the pleader will be unable to prove his case, he is entitled, upon averring a claim, to an opportunity to try to prove it." Continental Collieries v. Shober, 130 F.2d 631, 635 (3d Cir. 1942).

The court may consider documents, in deciding a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, "if they are either attached to the complaint or referenced in the complaint and central to the plaintiff's claim." Richard v. Potter, 2007 WL 173852, at *1 (D.N.J. Jan. 19, 2007) (citing Pryor v. National Collegiate Athletic Ass'n, 288 F.3d 548, 560 (3d Cir. 2002)); see also Pension Ben. Guar. Corp. v. White Consol. Industries, Inc.,

5

998 F.2d 1192, 1196-97 (3d Cir. 1993) (holding that court may consider undisputedly authentic document if plaintiff's claims are based on the document).  The exhibits submitted with Defendants' motions do not fit these categories.  They are not central to the Trustee's claim, as, for example, a contract would be when a complaint is based on that contract.  See Pension Ben. Guar. Corp., 998 F.2d at 1196.  Therefore, it is inappropriate for the Court to consider them at this stage.  See Richard, 2007 WL 173852, at *1; In re Cambell Soup Co. Sec. Litig., 145 F. Supp.2d 574, 588 n.1 (D.N.J. 2001).

At this juncture, the Trustee has not had the opportunity to present evidence concerning when the losses of natural resources were actionable.  See CERCLA § 113(g)(1)(A), 42 U.S.C. § 9613(g)(1)(A) (specifying events that trigger running of statute of limitations).  The omission of specific time periods in the Complaint does not warrant dismissal, but calls for expansion of the record.  New York v. Hickey's Coating, Inc., 380 F. Supp.2d 108, 120 (E.D. N.Y. 2005) (giving defendants permission to renew their motion based on statute of limitations defense in CERCLA action after further development of the record).

**C.**     **Whether Waste Oil Containing CERCLA Hazardous Substances is Subject to CERCLA Petroleum Exclusion.**

The Trustee states that used oil stored at the Alumina Facility in a 50,000 gallon above-ground tank contained trichloroethylene (TCE) and that TCE had been detected in the ground water beneath the Alumina Facility.  Complaint, ¶ 57.   The parties do not dispute that TCE is a hazardous substance under CERCLA.

The Alumina Defendants contend that the Trustee has failed to state a claim under CERCLA, because CERCLA excludes "petroleum, including crude oil or any fraction thereof

6

which is not otherwise specifically listed or designated as a hazardous substance" 42 U.S.C. §
9601(14).  The Alumina Defendants insist that they cannot be subjected to CERCLA liability as
a consequence of the release of the waste oil, notwithstanding the contamination of the waste oil
with TCE.

Although oil that naturally contains low levels of hazardous substances falls within this
petroleum exclusion, waste oil to which listed CERCLA substances have been added are not
within the petroleum exclusion.  United States v. Alcan Aluminum Corp., 964 F.2d 252, 266 (3d
Cir. 1992).  "Congress intended that the petroleum exclusion address oil spills, not releases of oil
which has become infused with hazardous substances." Tosco Corp. v. Koch Indus., Inc., 216
F.3d 886, 893 (10th Cir. 2000) (affirming finding that hazardous wastes commingled with
petroleum products floating on groundwater beneath refinery rendered CERCLA petroleum
exclusion inapplicable).  Because the Trustee alleges that the waste oil contained hazardous
substances, the Court will not dismiss for failure to state a claim under CERCLA.

**D.      Whether the Essential Elements of a CERCLA Claim are Adequately Pled**

The Alumina Defendants move for dismissal of the Trustee's claims brought under
section 107 of CERCLA, 42 U.S.C. § 9607, for failure to sufficiently allege and detail the
manner in which hazardous substances were released or threatened to be released.  Although the
Trustee alleges that an above-ground tank contained 50,000 gallons of used oil with a significant
concentration of TCE, and that TCE has been detected in ground water beneath the Alumina
Facility, the Trustee does not explicitly state that the used oil containing TCE was released or
threatened to be released from the tank.  See Complaint, ¶ 57.  The Alumina Defendants argue

7

that without such an explicit allegation, the broad allegation that "[t]here have been releases or

threatened releases, as defined under CERCLA § 101(22), 42 U.S.C. § 9601(22) of 'hazardous

substances,' as defined under CERCLA § 101(14), 42 U.S.C. § 9601(14) at or from facilities at

the REFINERY and ALUMINA FACILITY," is insufficient to state the "release" element of a

CERCLA claim.  See Complaint, ¶ 120.

> When a federal court reviews the sufficiency of a complaint, before the
> reception of any evidence either by affidavit or admissions, its task is necessarily a
> limited one. The issue is not whether a plaintiff will ultimately prevail but whether
> the claimant is entitled to offer evidence to support the claims. Indeed it may
> appear on the face of the pleadings that a recovery is very remote and unlikely but
> that is not the test. Moreover, it is well established that, in passing on a motion to
> dismiss, whether on the ground of lack of jurisdiction over the subject matter or
> for failure to state a cause of action, the allegations of the complaint should be
> construed favorably to the pleader.

Scheuer v. Rhodes,  416 U.S. 232, 236 (1974).  Moreover, "a complaint should not be dismissed

for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of

facts in support of his claim which would entitle him to relief."  Id. (quoting Conley v. Gibson,

355 U.S. 41, 45-46 (1957)).

Courts have applied these precepts in discussing the degree of specificity necessary to

state the "release" element of a CERCLA claim:

> [A] plaintiff need not allege the particular manner in which a release or threatened
> release has occurred in order to make out a prima facie claim under section 107(a)
> of CERCLA.  This conclusion is supported by the structure of CERCLA as well
> as the policies underlying notice pleading. . . . [I]t is conceivable that a claimant
> could recover for [response] costs under section 107(a) before the potential means
> of release have been identified. . . Finally, the purpose of notice pleading is to give
> general notice to the defendant of the nature of plaintiff's claim.  The allegation
> that there is a release or threatened release of hazardous substances from a
> particular "facility" provides such general notice.

Ascon Properties, Inc. v. Mobil Oil Co., 866 F.2d 1149, 1153 (9th Cir. 1989) (citations omitted);

see also United States v. Smuggler-Durant Min. Corp., 823 F. Supp. 873, 875-76 (D. Colo. 1993) (holding that allegation "that there was a release or threatened release of hazardous substances at the Site which caused the United States to incur response costs" stated a claim under section 107(a) of CERCLA).

In line with this precedent, the Court finds that the Trustee has met the notice-pleading requirement of Rule 12(b)(6) by alleging that there have been releases or threatened releases of hazardous substances from facilities at the Alumina Facility which have caused natural resource damages.  Thus, the CERCLA claim against the Alumina Defendants is sufficient.

## III.   TERRITORIAL COMMON LAW AND STATUTORY CLAIMS

### A.   Supplemental Jurisdiction over Territorial Claims

Defendants recognize that the Court has supplemental jurisdiction over the territorial claims pursuant to 28 U.S.C. § 1367(a) in that the territorial and CERCLA claims clearly "derive from a common nucleus of operative fact."  See United Mine Workers v. Gibbs, 383 U.S. 715, 725 (1966).  Defendants maintain, however, that the Court should decline to exercise its supplemental jurisdiction pursuant to section 1367(c).

The Court has the discretion to decline to exercise supplemental jurisdiction in four situations:

> (1) the claim raises a novel or complex issue of State law,
> (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
> (3) the district court has dismissed all claims over which it has original jurisdiction, or
> (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c)(1)-(4).

The CERCLA claim is still pending.  Thus, dismissal under § 1367(c)(3) is not presently warranted.  However, if any one of the other three  factors are shown, the Court has the discretion to dismiss the supplemental territorial claims.  <u>Parker v. Scrap Metal Processors, Inc.</u>, 468 F.3d 733, 743 (11th Cir. 2006) (clarifying that "[a]ny one of the section 1367(c) factors is sufficient to give the district court discretion to dismiss a case's supplemental state law claims").  The Court may "proceed to the merits of the territorial claims, in its discretion, even if one of the conditions in 28 U.S.C. § 1367(c) for dismissal of a territorial claim has been satisfied."  <u>See</u> <u>International Ass'n of Firefighters of St. Louis v. City of Ferguson</u>, 283 F.3d 969, 976 (8th Cir. 2002).  However, it is also possible for the Court to abuse its discretion by exercising supplemental jurisdiction when a § 1367(c) factor is present.  <u>Lyon v. Whisman</u>, 45 F.3d 758, 760 n.4 (3d Cir. 1995).

1.   <u>Novelty or Complexity of Territorial Claims.</u>

Federal courts typically do not regard common law claims of strict liability, negligence, negligence per se, trespass, and public nuisance to be novel or complex.  "Generally, state tort claims are not considered novel or complex."  <u>Parker</u>, 468 F.3d at 743; <u>see also</u> <u>New York v. Shore Realty Corp.</u>, 759 F.2d 1032, 1050 (2d Cir. 1985) (finding that district court did not abuse its discretion in reaching public nuisance claim);  <u>McDonald v. Timex Corp.</u>, 9 F. Supp.2d 120, 124-25 (D. Conn. 1998) (determining that established common law causes of action such as strict liability, negligence, nuisance, recklessness, and trespass, as well as claims of statutory violations did not raise new or complex issues of state law); <u>Arawan Mills Co. v. United Technologies</u>

Corp., 795 F. Supp. 1238, 1247-49 (D. Conn. 1992) (considering claims for breach of contract, specific performance and strict liability to be neither novel or complex).   The common law claims asserted here are not novel or complex.

Because Defendants seek damages for violation of the Virgin Islands Water Pollution Control Act (WPCA), the Court would have to engage in statutory interpretation to determine whether the WPCA provides for a damages remedy.  While this question may be an issue of first impression, the Court does not find it to be complex.  "Courts have considered claims to be complex when they address issues of first impression that are numerous or of constitutional magnitude."  Schwarm v. Craighead, 233 F.R.D. 655, 659 (E.D. Cal. 2006).  Here the Court faces a single, unexceptional question of statutory interpretation.  A federal court should not decline to exercise its jurisdiction when only a simple interpretation of statutory language is involved.  Daenzer v. Wayland Ford, Inc., 193 F. Supp.2d 1030, 1043 (W.D. Mich. 2002).  "A bare and sweeping allegation of novelty and complexity does not outweigh the presence of highly related federal and state claims. In such a situation, judicial economy speaks a strong preference for retaining the state law claims, even if they may potentially be novel and complex."  Detroit Edison Co. v. Michigan Dept. of Environmental Quality, 29 F. Supp.2d 786, 793 (E.D. Mich. 1998).

Even if the question of whether the WPCA provides for a damages remedy were novel or complex, the Court would exercise supplemental jurisdiction.  "No single factor – such as whether the case is in an 'early stage' or involves novel issues of state law – is dispositive. Rather, [the Court] look[s] to all the factors under the specific circumstances of a given case."  Parker & Parsley Petroleum Co. v. Dresser Industries,  972 F.2d 580, 587 (5th Cir. 1992).

11

Because, except for the question of the available remedies, the WPCA claim rests on the same facts and theories as the CERCLA claim, the Court finds it appropriate to exercise supplemental jurisdiction.  In sum, the Court cannot find that the territorial claims, individually or as a whole, are so novel and complex as to permit it to decline to exercise supplemental jurisdiction.

    2.    <u>Predomination of Territorial Claims</u>

"The exercise of a District Court's power under § 1367(c)(2) [to dismiss state or territorial claims that substantially predominate over the federal claim or claims] is not favored."  <u>Bostic v. AT & T of Virgin Islands</u>, 166 F. Supp.2d 350, 364 (D.V.I. 2001).  In the Third Circuit, "§ 1367(c)(2)'s authority should be invoked only where there is an important countervailing interest to be served by relegating state claims to the state court."  <u>Borough of West Mifflin v. Lancaster</u>, 45 F.3d 780, 789 (3d Cir. 1995).  "Generally, a district court will find substantial predomination where a state claim constitutes the real body of a case, to which the federal claim is only an appendage – only where permitting litigation of all claims in the district court can accurately be described as allowing a federal tail to wag what is in substance a state dog."  <u>De Asencio v. Tyson Foods, Inc.</u>, 342 F.3d 301, 309 (3d Cir. 2003) (quotation omitted).

In <u>White v. County of Newberry, S.C.</u>, 985 F.2d 168, 172 (4th Cir. 1993), the court affirmed the district court's discretional exercise of jurisdiction over the state law claims under § 1367(c) when federal question jurisdiction was premised on CERCLA.  The defendant argued that the ultimate award of compensatory damages under the state claim would greatly exceed any amount of response costs.  The court rejected this position, stating that "[t]he determination of whether a state claim predominates is not grounded in dollars and cents; the district court when

exercising its discretion, is invoking the abstention doctrine and must address federalism concerns about avoiding federal overreaching into highly specialized state enforcement or remedial schemes."  Id.  As in White, the Court is not convinced that its consideration of the territorial claims would amount to overreaching into territorial remedial schemes.

Similarly in McDonald, defendants asserted that plaintiff's state law claims for punitive damages would require proof and litigation beyond the level required by CERCLA.  The court exercised its supplemental jurisdiction "because it is irrelevant that the scope of relief under state law differs from that under federal law."  9 F. Supp.2d at 125 (quoting New York v. Shore Realty Corp., 759 F.2d 1032, 1050 (2d Cir. 1985)); see also Murray v. Bath Iron Works Corp., 867 F. Supp. 33, 47 (D. Me. 1984) (stating that "the fact that the remedies available on the state law claims differ from those available on the federal claims does not mean that the state claims substantially predominate over the federal claims").

The territorial claims do not predominate over the CERCLA claim in this action.  The territorial claims and CERCLA all essentially seek compensation for natural resource damages involving a common nucleus of operative facts.   This is not a case in which a federal tail wags a territorial dog.

3.      Exceptional Circumstances

The factors of judicial economy, convenience, fairness to the parties, and whether all claims would be expected to be tried together are evaluated under § 1367(c)(4).  See Parker, 468 F.3d at 745.  Since the CERCLA claim is still pending in this Court, sending the territorial claims which are premised on the very same allegations of contamination that underpin the CERCLA

claim would cause a substantial duplication of effort by the Superior Court.  Similarly, it would be more convenient for the parties to litigate a case involving the same set of facts in a single forum.  Defendants do not suggest that the Court's exercise of its supplemental jurisdiction would be in anyway unfair and the Court cannot think of any reasons that would tend to show unfairness.  Because the federal claim and territorial claims derive from a common nucleus of operative facts, the plaintiff would ordinarily be expected to try them all in one proceedings.  See id. at 747.  Indeed, "plaintiff's expectation to resolve all claims together weighs in favor of retaining supplemental jurisdiction over plaintiff's [territorial] law claims." Id.  Finally, a strong factor in favor of the exercise of supplemental jurisdiction is that the territorial claims implicate the doctrine of federal preemption.  See Gibbs, 383 U.S. at 729 (noting that "federal courts are particularly appropriate bodies for the application of preemption principles");  New Mexico v. General Elec. Co., 467 F.3d 1223, 1242 n.29 (10th Cir. 2006) (considering effect which CERCLA might have on state's NRD claim as weighing in favor of retaining jurisdiction).

Because the Court has the power to exercise supplemental jurisdiction over the territorial claims and because none of the factors enumerated in 28 U.S.C. § 1367(c) are persuasively present, the Court does not have the discretion to dismiss the territorial claims for lack of subject-matter jurisdiction.  Rather the Court will exercise its supplemental jurisdiction over the territorial claims at this juncture.

### B.      Preemption of Territorial Causes of Action

"Congress did not intend CERCLA to completely preempt state laws related to hazardous waste contamination." New Mexico v. General Elec. Co., 467 F.3d 1223, 1244 (10th Cir. 2006).

CERCLA "preserve[s] a quantum of state legislative and common law actions and remedies related to the release and cleanup of hazardous waste." Id. at 1246.

However, CERCLA's comprehensive scheme preempts any state remedy designed to achieve something other than the restoration, replacement, or acquisition of the equivalent of a contaminated natural resource. Id. at 1247. For example, if the Government of the Virgin Islands were to seek an unrestricted award of damages for harm to natural resources caused by CERCLA-regulated hazardous substances, it could not withstand CERCLA's comprehensive natural resource damages scheme. See id. at 1248.

The Court does not yet have before it an indication of the specific remedy the Government of the Virgin Islands will be seeking should any Defendants be found liable on any territorial causes of action, nor whether damages will be awarded for harm to natural resources caused by any non-CERCLA regulated substances. Thus, it is premature for the Court to find that any territorial causes of action are preempted.

**C.     Standing as *Parens Patriae* to Bring Action under Public Trust Doctrine**

The Trustee claims that he has standing as *parens patriae*, which is a latin term, meaning literally, "parent of his or her country." Black's Law Dictionary (8th ed. 2004). He seeks to recover damages to Virgin Islands' natural resources under the public trust doctrine.

1.     *Parens Patriae* Standing

Defendants argues that the Trustee lacks standing to bring the common law and territorial statutory claims. First, they contend that it is unclear whether an unincorporated territory possesses a *parens patriae* relationship with the citizens of the Territory, as a state would with its

15

citizens.  Second they contend that the Trustee does not have the right to prosecute a claim for damages in *parens patriae* on behalf of the Government of the Virgin Islands.

The United States Supreme Court remarked in <u>Alfred L. Snapp & Son, Inc. v. Puerto Rico, ex rel., Barez</u>, 458 U.S. 592, 608 n.15 (1982) that the Commonwealth of Puerto Rico has standing as *parens patriae*: "It has a claim to represent its quasi-sovereign interests in federal court as least as strong as that of any State."

The status of Puerto Rico *vis a vis* the United States, however, is different from that of the Virgin Islands.  Puerto Rico is a Commonwealth that operates under its own constitution, <u>see Calero-Toledo v. Pearson Yacht Leasing Co.</u>, 416 U.S. 663, 671 (1974), whereas the Virgin Islands is an unincorporated territory,  <u>Ballentine v. United States</u>, 486 F.3d 806, 809 (3d Cir. 2007).[7]  Notwithstanding the Territory of the United States Virgin Islands having fewer aspects of sovereignty than the Commonwealth of Puerto Rico, the Third Circuit has repeatedly recognized that "the Revised Organic Act has conferred upon [the Territory of the Virgin Islands] attributes of autonomy similar to those of a sovereign government or a state." <u>Government of Virgin Islands v. Bryan</u>, 818 F.2d 1069, 1072 (3d Cir. 1987) (quoting <u>In re Estate of Hooper</u>, 359 F.2d 569, 578 (3d Cir. 1966)).   Because the Territory of the Virgin Islands has attributes of autonomy similar to those of a sovereign government or a state, and keeping in mind that the Supreme Court has held that the Commonwealth of Puerto Rico may bring actions as *parens patriae*, the Court

---

[7]  One of the ramifications of this distinction is that unlike the Virgin Islands, Puerto Rico is treated as a separate sovereign for double jeopardy purposes.  <u>Compare</u>  <u>United States v. Ayala</u>, 47 F. Supp.2d 196, 199 & n.4 (D.P.R. 1999) (citing <u>United States v. Lopez Andino</u>, 831 F.2d 1164, 1168 (1st Cir. 1987)) <u>with</u> <u>Government of Virgin Islands v. Dowling</u>, 633 F.2d 660, 669 (3d Cir. 1980).

holds that the Territory of the Virgin Islands may bring suits as *parens patriae* in appropriate circumstances.

The Commissioner of Planning and Natural Resources insists that as head of the Department charged with administering and enforcing laws pertaining to natural resources, 3 V.I.C. §§ 400(b), 401(a), he is the proper plaintiff with respect to the territorial common law and statutory claims.   The statutes the Commissioner relies on do not give him the authority to sue on behalf of the Department or the Territory.  The Department of Planning and Natural Resources is an arm of the Government of the Virgin Islands. See Bowers v. National Collegiate Athletic Ass'n, 475 F.3d 524, 546 (3d Cir. 2007) (recently reiterating test for determining whether entity is arm of the state).  Because the Government of the Virgin Islands is the real party in interest,  the Court will allow the Government of the Virgin Islands to be substituted as prosecutor of the territorial claims.  See Fed. R. Civ. P. 17(a).

### 2.   Public Trust Doctrine

 "In general, the public trust doctrine recognizes that some types of natural resources are held in trust by a government for the benefit of the public." West Indian Co., Ltd. v. Government of Virgin Islands, 643 F. Supp. 869, 875 (D.V.I. 1986).  A sovereign power has the right to define the nature and extent of its trust properties.  See Phillips Petroleum Co. v. Mississippi, 484 U.S. 469, 475 (1988).

By law, "all waters within the United States Virgin Islands are . . . public waters belonging to the people of the United States Virgin Islands." 12 V.I.C. § 151.   "Water" is defined broadly as including "ponds, springs, wells, and streams and all other bodies of surface or underground

17

water, natural or artificial, inland or coastal, fresh or salt, public or private."  12 V.I.C. § 152.

Thus, the allegedly contaminated bodies of groundwater and coastal waters that are the subject of

this lawsuit are held by the Government of the Virgin Islands in trust for its people.

When natural resources are held in trust, the *parens patriae* may bring common law

actions for natural resource damages.  See Maryland Department of Natural Resources v.

Amerada Hess, 350 F. Supp. 1060. 1067 (D. Md. 1972).  The sovereign has "the obligation to

bring suit not only to protect the corpus of the trust property but also to recoup the public's loss

occasioned by the negligent acts of those who damage such property."  Ohio v. City of Bowling

Green, 313 N.E.2d 409, 411 (Ohio 1974).   Thus, the Government of the Virgin Islands has both

standing as *parens patriae* and has allegedly suffered damages to the waters that it holds in trust,

such that it may maintain common law causes of action.

### D.      Statute of Limitations and Laches Defenses

Defendants insist that the statute of limitations and laches bar the Government of the

Virgin Islands from pursuing the territorial causes of action.  The Government of the Virgin

Islands, the real party in interest with respect to the territorial causes of action, is not subject to the

defenses of laches or the statutes of limitations, unless expressly waived.  In re Hooper's Estate,

359 F.2d 569, 578 (3d Cir. 1966).  "This immunity is based upon the public policy of protecting

the citizens from damage to or loss of their public rights and property through the negligence of

public officers."  Id.  Thus, the territorial causes of action are not time-barred.

### E.      Whether Elements of Trespass and Public Nuisance are Pled

####        1.      Trespass

18

One of the elements of the common law tort of trespass, as defined by Restatement (Second) of Torts § 158, is an entry on land.  Another is that the land be in the possession of another.  The tort of trespass does not lie, under Virgin Islands law, when the only interest invaded is to water.  Nor does guardianship of the public trust give the Government of the Virgin Islands sufficient possessory interest in any water or land to maintain a trespass action.  New Mexico v. General Elec. Co., 467 F.3d 1223, 1248 (10th Cir. 2006).  Thus, the cause of action for trespass is dismissed.

2.      Public Nuisance Action for Damages

The Trustee accuses Defendants of causing a public nuisance by contaminating the waters of the Virgin Islands.  "A public nuisance is an unreasonable interference with a right common to the general public."  Restatement (Second) of Torts § 821B.

To bring a public nuisance claim for damages, a plaintiff "must have suffered harm of a kind different from that suffered by other members of the public."[8]  Restatement (Second) of Torts § 821C(1).  Defendants argue that the Government of the Virgin Islands cannot meet this

---

[8]  Although Restatement (Second) of Torts § 821C(1) refers to "an individual action," the Court does not interpret that term as excluding a governmental entity, as the Trustee suggests.  If the Court were to adopt the Trustee's construction, it would reason that, since section 821C(2) explicitly gives governmental entities the right to injunctive relief, section 821C(1), by mentioning only "an individual action" and not "state action," impliedly precludes a governmental entity from suing for damages, whether or not the governmental entity can show a special injury.

   The Court believes that the intent of section 821C was only to require that special harm be shown as a prerequisite to suing for damages.  This would "relieve the defendant of the multiplicity of actions that might follow if everyone were free to sue for the common wrong."  Restatement (Second) of Torts § 821C, cmt. a.  There is no indication that it was meant to prevent a governmental entity from obtaining damages, if the governmental entity could show that it suffered special harm.

"special injury" showing.

As *parens patriae*, the Government of the Virgin Islands has an independent interest in the property it holds in public trust.  Its sovereign interests in its natural resources "are separate and distinct from the interests of its individual citizens."  Maine v. M/V Tamano, 357 F. Supp. 1097, 1100 (D. Me. 1973).  Harm to its natural resources, therefore, harms the Government of the Virgin Islands, differently than it harms the members of the public.  Thus, the Government of the Virgin Islands can state a cause of action against Defendants for causing a public nuisance by contaminating the waters of the Virgin Islands.

### F.     Damages Claim under the Water Pollution Control Act

Defendants contend that the claim for damages under the Virgin Islands Water Pollution Control Act (WPCA) is not viable because that statute provides only for equitable relief and not for damages.  Title 12 V.I.C. § 190(a) (2006) provides, in pertinent part:

> (a) *Injunctive relief.* The Commissioner, or any resident of the United States Virgin Islands, is authorized to commence a civil action or may intervene in a civil action for appropriate relief, including a permanent or temporary injunction, for any violation or threatened violation for which the Commissioner is authorized to issue a compliance order under section 188 of this chapter.

The Commissioner of DPNR contends that the term "appropriate relief" extends to damages.

In United States v. Price, 688 F.2d 204, 214 (3d Cir. 1982), the Third Circuit Court of Appeals considered the meaning of section 1431 of the Safe Water Drinking Act (SDWA), 42 U.S.C. § 300i, "authorizing the United States to protect public water supplies from contamination by 'commencing a civil action for appropriate relief, including a restraining order or permanent or temporary injunction.'" The Third Circuit found that the forms of relief which are "appropriate"

20

extend to "nothing less than the full equity powers of the federal courts."  Id.  Thus, the court

concluded that the plaintiff's request for funds to conduct a diagnostic study , even though it

would have required monetary payments, did not transform it to a claim for damages, but was an

appropriate form of preliminary equitable relief.  Id. at 211-212.

The Third Circuit did not pronounce explicitly that the term "appropriate relief" as used in

the SDWA, in a context nearly identical to that of the WPCA, does not encompass damages.

However, the entire analysis of whether ordering relief consisting of a diagnostic study requiring

monetary payments was permissible under the SDWA would have been unnecessary if the Third

Circuit considered that damages to be a form of "appropriate relief."

The Court considers the United States v. Price interpretation as persuasive.  The statutory

language "appropriate relief, including a permanent or temporary injunction" in the WPCA does

not provide for a damages remedy.


## IV.     FAILURE TO CONFORM WITH RULE 10(b)

Defendants St. Croix Alumina, L.L.C. and Alcoa World Alumina, L.L.C. complain that

the Trustee does not state in a separate count each claim arising from a "separate transaction or

occurrence" as required by Rule 10(b) of the Federal Rules of Civil Procedure.  "Rule 10 requires,

inter alia, that each claim founded on a separate transaction or occurrence be stated in a separate

count when such arrangement facilitates understanding."  Gilbert v. Feld, 788 F. Supp. 854,

862-63 (E.D. Pa. 1992).   According to these Defendants, by lumping different releases together,

the Trustee may be able to avoid dismissal of untimely claims and unfounded claims.

The manner in which the Trustee states his Complaint does not restrain the Court in

addressing a motion to dismiss.  If dismissal of a cause of action as to a particular release is

warranted, the Court may grant such dismissal, notwithstanding reference to that release, along

with other releases, in a single count.  The Court finds that the Complaint sufficiently

straightforward and understandable such that reorganization into additional separate counts to

more rigidly adhere to Rule 10(b) is not warranted.

**V.    Conclusion**

Defendants have raised no grounds that would warrant dismissal of the CERCLA claim at

this time.  The Complaint does not demonstrate on its face that the statute of limitations has run.

The documents attached to the parties' motions to dismiss are not properly before the Court.  The

Alumina Defendants' argument that, to the extent that the CERLCA claim relates to the release of

waste oil containing hazardous substances, such as TCE, it should be dismissed as falling within

CERCLA's petroleum exclusion, is unavailing.  Finally, the Complaint places Defendants on

notice that they are being charged with the release of hazardous substances, even though the

mechanism of that release is not pled.

The Court will not accept Defendants' invitation to dismiss the territorial causes of action

on jurisdictional grounds, but will exercise its supplemental jurisdiction.  The Government of the

Virgin Islands, rather than the Commissioner of DPNR, has *parens patriae* standing to bring the

territorial causes of action.  The Court will allow the substitution of the Government of the Virgin

Islands for the Commissioner of DPNR, with respect to the territorial causes of action.  As the

parties have clarified in their supplemental briefs, it is premature for the Court to determine

whether the remedies of the territorial claims will conflict with CERCLA's goals.  Therefore, the

Court cannot find the territorial claims to be federally preempted at this stage.

Since the sovereign is immune to statute of limitations and laches defenses, unless such defenses are waived, the territorial causes of actions are not time-barred. Because guardianship of the public trust does not rise to the level of possession necessary to maintain an action in trespass, the trespass claim is dismissed. The Government of the Virgin Islands has alleged the particular harm required to bring a damages claim for public nuisance. The WPCA claim for damages fails since the WPCA does not provide for an action in damages. Finally, the Complaint conforms adequately enough with Rule 10(b) of the Federal Rules of Civil Procedure to withstand Defendants' motion to dismiss.

In sum, the motions to dismiss are granted as to the WPCA and trespass claims and are otherwise denied. The Government of the Virgin Islands may be substituted for the Commissioner of DPNR as to the remaining territorial causes of action.

ENTER:

DATE:        October 31, 2008                _____/s/_____
                                             HONORABLE RAYMOND L. FINCH
                                             SENIOR DISTRICT JUDGE