```
           IN THE DISTRICT COURT OF THE VIRGIN ISLANDS
                      DIVISION OF ST. CROIX

COMMISSIONER OF THE DEPARTMENT    :    CIVIL ACTION
OF PLANNING AND NATURAL           :
RESOURCES, ROBERT S. MATHES,      :
et al.                            :
                                  :
          v.                      :
                                  :
CENTURY ALUMINA COMPANY,          :
LLLP, et al.                      :    NO. 05-0062
```

MEMORANDUM

Bartle, C.J.                                      June 19, 2009

Plaintiffs Robert Mathes, Commissioner of the Department of Planning and Natural Resources ("DPNR"), acting as trustee for the natural resources of the Virgin Islands, and the Government of the Virgin Islands, as parens patriae, have filed suit under the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. § 9601 et seq., as well as under territorial statutes and the common law. Plaintiffs have sued two groups of defendants: first, HOVENSA, L.L.C. and Hess Oil Virgin Islands Corporation ("HOVIC") (collectively, "the Refinery Defendants"); and second, St. Croix Alumina, L.L.C. ("SCA"), Alcoa World Alumina, L.L.C., Virgin Islands Alumina Company ("VIALCO"), Century Alumina Company, Lockheed Martin Corp., and St. Croix Renaissance Group, L.L.L.P. ("Renaissance") (collectively, the "Alumina Defendants"). Each defendant brings counterclaims against plaintiffs for contribution under CERCLA § 113(f) and for "common law setoff."

Before the court is the motion of plaintiffs to dismiss the counterclaims of defendants pursuant to Rules 8, 12(b)(1), and 12(b)(6) of the Federal Rules of Civil Procedure.

I.

Under Rule 12(b)(1) of the Federal Rules of Civil Procedure, a party may move to dismiss claims against it for lack of subject matter jurisdiction. The burden of proving the existence of subject matter jurisdiction lies with the party asserting the challenged claim. See Carpet Group Int'l v. Oriental Rug Imps. Ass'n, Inc., 227 F.3d 62, 69 (3d Cir. 2000)). We must determine whether the allegations underlying the claims at issue, if taken as true, are sufficient to invoke the jurisdiction of the court. See Taliaferro v. Darby Twp. Zoning Bd., 458 F.3d 181, 188 (3d Cir. 2006).

Rule 12(b)(6) permits a party to move to dismiss for failure to state a claim upon which relief can be granted. The court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008) (internal quotation marks and citations omitted).

II.

For present purposes, we accept as true the factual allegations underlying defendants' counterclaims. We will also consider any formal admissions made by defendants in response to

the original complaint. All facts stated below are either not in dispute or taken in the light most favorable to defendants on their counterclaims.

This case involves allegations of environmental contamination of the natural resources of the United States Virgin Islands. Plaintiffs claim that over a span of years two of the major industrial facilities situated on St. Croix have released hazardous materials into the surrounding environs. They seek relief from current and former owners and operators of the facilities.

The first facility at issue is an oil refinery located at Limetree Bay on St. Croix (the "Oil Refinery"), owned and operated from approximately 1967 to 1998 by defendant HOVIC, a Virgin Islands corporation operating out of New York. On October 30, 1998, HOVIC sold the Oil Refinery to defendant HOVENSA, a Virgin Islands company in which HOVIC owns a 50% interest.

In April, 1982, HOVIC notified the United States Environmental Protection Agency and the Virgin Islands Department of Conservation and Cultural Affairs, predecessor to plaintiff, the DPNR, that various petroleum-related hydrocarbons were found in the groundwater under the Oil Refinery. Studies also detected substantial amounts of methyl-tert-butyl ether ("MTBE"), a gasoline additive of uncertain toxicity to humans, and other potentially hazardous substances. Concerns developed that the contamination had spread to nearby natural resources including

the Kingshill Aquifer, which is the primary source of fresh water on St. Croix.

In September, 1985 HOVIC and the United States Environmental Protection Agency entered into a Consent Decree setting forth a plan for additional data collection regarding the existence and possible spread of hydrocarbons. The parties eventually determined that sources of the petroleum contamination included Oil Refinery storage tanks and other structures designed and approved by HOVIC on or before the sale of the property to HOVENSA. Both HOVIC and HOVENSA have contributed to ongoing remediation efforts under the direction of the Environmental Protection Agency.

The second facility at which hazardous materials were allegedly released is the alumina refinery located in Estate Anguilla, Kingshill, on St. Croix (the "Alumina Refinery"). The Alumina Refinery was constructed in 1965. From approximately 1972 through 1989, Martin Marietta Corporation ("Martin Marietta") owned and operated the Alumina Refinery through various subsidiaries, all of which later merged into defendant Lockheed Martin. In 1989, Martin Marietta sold the Alumina Refinery to defendant VIALCO. In April, 1995 defendant Century acquired VIALCO and shortly thereafter sold the property to defendant SCA, a subsidiary of defendant Alcoa. In June, 2002, SCA sold the refinery to the current owner, defendant Renaissance, a Delaware limited liability limited partnership operating out of St. Croix.

-4-

Plaintiffs assert that operation of the Alumina Refinery has resulted in widespread distribution of several contaminants, including hydrocarbons and sulfuric acid, into the soil and groundwater below the Alumina Refinery and surrounding property, again including the Kingshill Aquifer.

As noted earlier, all defendants bring counterclaims for contribution with respect to cleanup costs under CERCLA and for "common law setoff." HOVIC and HOVENSA assert that the Oil Refinery property and surrounding areas, including the Kingshill Aquifer, have suffered environmental contamination from several sources for which they are not responsible. They contend that the public sewage system which transports, treats, and disposes of raw sewage and wastewater throughout St. Croix has been and continues to be subject to leaks. These leaks have allegedly distributed "volatile organic compounds, semi-volatile organic compounds, pesticides, and metals" throughout the areas at issue. HOVIC and HOVENSA also assert that the sewage system has accelerated the distribution of "naturally occurring arsenic" and has resulted in discharges of "untreated or inadequately treated wastewater" in near-shore coral communities in the vicinity of the Oil Refinery.[1]

Like the Oil Refinery defendants, the Alumina Defendants bring counterclaims in which they allege that any

---

1. In 2004, the Virgin Islands Waste Management Authority was created as a public body responsible for the operation and upkeep of the sewage system. That entity is now a third-party defendant in this case.

contamination of these areas is at least partially attributable to poor maintenance of the public sewage system by the Government of the Virgin Islands.  Further, the Alumina Defendants seek contribution and set-off for environmental damage caused by the release of "leachate" from a government-operated landfill situated adjacent to the Alumina Refinery.

### III.

Plaintiffs, who are the Government of the Virgin Islands and one of its officials, contend that sovereign immunity bars the counterclaims of defendants for money damages.  The United States purchased the Virgin Islands from the Kingdom of Denmark in 1917.  Granville-Smith v. Granville-Smith, 349 U.S. 1, 7 (1955).  The Government of the Virgin Islands largely retained its pre-transfer structure for almost twenty years following the purchase by the United States.  Id.  In 1936, Congress first exercised its authority "to regulate and define the government of the Virgin Islands" through the passage of the Organic Act.  United States v. Gov't of V.I., 363 F.3d 276, 286 (3d Cir. 2004).  That legislation was substantially amended in 1954 and has since then been known as the Revised Organic Act.  Act of July 22, 1954, 68 Stat. 497, 48 U.S.C. § 1541 et seq.

The Virgin Islands, an unincorporated Territory of the United States, is "not sovereign, in the true sense of that term."  Gov't of V.I. v. Bryan, 818 F.2d 1069, 1072 (3d Cir. 1987) (quoting In re Estate of Hooper, 359 F.2d 569, 578 (3d Cir. 1966)).  Congress has nonetheless granted it "attributes of

autonomy similar to those of a sovereign government or a state" through the Revised Organic Act.  Id.  The Act provides for sovereign immunity as follows:

> The government of the Virgin Islands shall have the powers set forth in this chapter and shall have the right to sue by such name and in cases arising out of contract, to be sued: Provided, That no tort action shall be brought against the government of the Virgin Islands or against any officer or employee thereof in his official capacity without the consent of the legislature constituted by subchapter III of this chapter.

48 U.S.C. § 1541(b).

Defendants concede that in the absence of express consent to suit or some other waiver of immunity, the Revised Organic Act would bar a private plaintiff from invoking the jurisdiction of a federal court to pursue a tort claim under CERCLA against the government of the Virgin Islands.  They also recognize that the Virgin Islands Legislature has not waived sovereign immunity with respect to this suit under either the Virgin Islands Tort Claims Act, see V.I. Code Ann. tit. 33, § 3401 et seq., or any other territorial statute.

Defendants first argue that sovereign immunity with respect to claims under CERCLA §§ 107(a) and 113(f) has been abrogated by Act of Congress.  Sovereign immunity may be waived by statute only if there is an express statement of intent to do so.  Wiltshire by Wiltshire v. Gov't of V.I., 893 F.2d 629, 633 (3d Cir. 1990); see also Lane v. Pena, 518 U.S. 187, 192 (1996).

Since 1986, the statute at issue, that is, CERCLA, has permitted specifically claims for costs associated with remedial action under § 107(a) to be brought against all "persons," a term which includes the United States Government and entities defined as "States."  42 U.S.C. §§ 9607(a), 9601(21).  In <u>Pennsylvania v. Union Gas Co.</u>, the Supreme Court confirmed that these provisions unmistakably express the intent of Congress to waive the sovereign immunity of those entities.  491 U.S. 1, 8 (1989), <u>overruled on other grounds by</u> <u>Seminole Tribe of Fla. v. Florida</u>,[2] 517 U.S. 44, 59 (1996); <u>see</u> <u>also</u> <u>Burnette v. Carothers</u>, 192 F.3d 52, 58-59 (2d Cir. 1999).  The statute further specifies that:

> the terms "United States" and "State" include the several States of the United States, the District of Columbia, the Commonwealth of Puerto Rico, Guam, American Samoa, <u>the United States Virgin Islands</u>, the Commonwealth of the Northern Marianas, and any other territory or possession over which the United States has jurisdiction.

42 U.S.C. § 9601(27) (emphasis added).  As such, Congress has "unequivocally expressed" an intent to waive the sovereign immunity not only of the States but also of the Virgin Islands with respect to claims under § 107(a).

Plaintiffs submit that Congress lacks the authority under the United States Constitution to abrogate the sovereign immunity of the Virgin Islands based on the recent string of Supreme Court decisions holding that Congress lacks such

---

2. As we recognize below, the Court ultimately held that State immunity is not subject to waiver by federal statute.

authority with respect to the States.  See Alden v. Maine, 527 U.S. 706, 730 (1999); Seminole Tribe, 517 U.S. at 59.  Those cases are premised upon the view, described by Justice Kennedy in Alden, that State immunity is grounded in "fundamental postulates implicit in the constitutional design."  527 U.S. at 730.[3]  Congress is thus unable to legislate away the immunity of the States in the absence of an explicit grant of constitutional power ratified after the Eleventh Amendment, such as that embodied in § 5 of the Fourteenth Amendment.  Seminole Tribe, 517 U.S. at 59.  The Fourteenth Amendment is not implicated here.  Consistent with Seminole Tribe, courts have permitted private CERCLA claims against the federal government but have rejected the effort by Congress to allow such suits against the States.  Burnette, 192 F.3d at 58-59.

Article IV, Section 3, Clause 2 of the Constitution, known as the "Territorial Clause," reads as follows:

> The Congress shall have power to dispose of and make all needful Rules and Regulations respecting the Territory or other Property belonging to the United States; and nothing in this Constitution shall be so construed as to Prejudice any Claims of the United States, or of any particular State.

It stands as a grant to Congress of "plenary power" over the Territories.  Dist. of Columbia v. Carter, 409 U.S. 418, 430 (1973).

---

3.  The Eleventh Amendment, once thought to be the source of State immunity, is now regarded largely as a confirmation of an independent and pre-existing State entitlement.  Alden, 527 U.S. at 729-30.

Whatever the law may be as to other possessions of the United States, we conclude that the holdings of Seminole Tribe and its progeny concerning State sovereign immunity have no bearing on the relationship between Congress and the Government of the Virgin Islands.  The Court could scarcely have been more emphatic that the nature of State immunity stems from "constitutional design."  Alden, 527 U.S. at 733.  The Virgin Islands, although having been granted broad latitude for self-governance under the Revised Organic Act, simply cannot lay claim to a similar constitutional privilege.  It is akin to a subdivision of the federal government, United States v. Wheeler, 435 U.S. 313, 321 n.16 (1978), over which Congress has "ultimate control."  United States v. Gov't of V. I., 363 F.3d at 286.  Indeed, the United States and a given Territory "are not two separate sovereigns to whom the citizen owes separate allegiance in any meaningful sense, but one alone."  Wheeler, 435 U.S. at 321 n.16 (citations omitted).

Consequently, our Court of Appeals has long held that although the Virgin Islands does possess sovereign immunity, it exists solely to the extent "conferred by the Revised Organic Act ...."  Durant v. Husband, 28 F.3d 12, 14 (3d Cir. 1994).  Indeed, the Virgin Islands' own courts have held that the Government of the Virgin Islands enjoys complete sovereign immunity "only by express mandate of Congress."  Rosa v. V.I. Hous. Auth., No. CIV. 584/1999, 2001 WL 883548, at *1 (Terr. V.I. Apr. 17, 2001).  We find it implausible that Congress may grant such immunity by

statute and yet lack the authority later to waive or remove it once it is granted.

Plaintiffs direct us to decisions, including one penned by this court, stating that Territories such as the Virgin Islands possess an "inherent or common law" sovereign immunity. Macedon v. Gov't of V.I., Civ. A. No. 01-79, 2008 WL 2625219, at *3 (D.V.I. June 27, 2008) (quoting Sunken Treasure v. Unidentified, Wrecked, & Abandoned Vessel, 857 F. Supp. 1129, 1134 n.10 (D.V.I. 1994)); see also Marx v. Gov't of Guam, 866 F.2d 294, 297-98 (9th Cir. 1989).  They argue that if these decisions are correct, the "grant" of sovereign immunity in the Revised Organic Act is merely precatory.  Under this view, Congress may of course recognize the sovereign immunity of the Territories but is incapable of waiving it.

We reject our language in Macedon to the extent it is read to mean that the Virgin Islands has sovereign immunity beyond the grant of the Revised Organic Act.  In that case involving 42 U.S.C. § 1983, we implicitly recognized that Congress could waive the Territory's sovereign immunity, although it had not done so in that instance.  Macedon, 2008 WL 2625219, at *3.  With respect to the holding of Marx v. Gov't of Guam, we note that it is not binding on us and in any event turned largely on factors unique to a Territory other than the Virgin Islands.

In sum, we conclude that plaintiffs' argument with respect to "inherent or common law sovereign immunity" does not have a compelling basis in the authority cited above.  More

-11-

importantly, it is totally belied by the Territorial Clause of the Constitution and the aforementioned decisions of our Court of Appeals and the Supreme Court.[4]

For the reasons stated above, we conclude that Congress has the power to abrogate the sovereign immunity of the Virgin Islands and that it has done so with respect to defendants' counterclaims under CERCLA § 107(a). Accordingly, we will deny the motion of plaintiffs to dismiss defendants' claims under CERCLA on the basis of sovereign immunity.

Plaintiffs also argue that sovereign immunity bars the counterclaims of defendants for "common law setoff," which read as follows:

> Any recovery for damages, costs or expenses by Plaintiffs ... under any Count in the Complaint should be denied or substantially reduced because the Government's own conduct, recklessness, negligence and/or failure to enforce the applicable statutes and/or regulations and/or orders regarding the operation of the Refinery caused or significantly contributed to any damages, costs or expenses.
>
> [Defendants are] entitled to an offset against any damages, costs, fees, and/or expenses and/or liability to Plaintiffs for the greater of: (1) any amount actually paid by any person heretofore or hereafter for any of the damages, costs, fees and/or expenses alleged in Plaintiffs' Complaint, or (2) the equitable share of the liability of any person or entity that heretofore has received or hereafter receives a release from

---

4. We need not pass on the tangential question of whether the unique history of a Territory other than the Virgin Islands, such as Puerto Rico, might affect our analysis. See, e.g., Jusino Mercado, 214 F.3d 34.

>               liability or covenant not to sue with respect
>               to any of the damages, costs, fees and/or
>               expenses alleged in the Complaint.

Again, defendants concede that no Act of Congress or of the Virgin Islands Legislature has waived immunity with respect to these claims. They instead submit that plaintiffs' initiation of the instant lawsuit waived any immunity with respect to claims for recoupment.

A counterclaim sounds in recoupment if: "1) the claim arises from the same transaction or occurrence as the main claim; 2) it seeks relief of the same kind and nature as that sought by the main claim; and 3) the claim is defensive in nature and does not seek affirmative relief." United States v. Am. Color and Chem. Corp., 858 F. Supp. 445, 451 (M.D. Pa. 1994); see also Livera v. First Nat'l State Bank of N.J., 879 F.2d 1186, 1195-96 (3d Cir. 1989). Where a state actor brings an action as a plaintiff, sovereign immunity generally will not impede a counterclaim for recoupment. See Livera, 879 F.2d at 1196 (citing United States v. U.S. Fid. and Guar. Co., 309 U.S. 506, 511 (1940)).[5]

Plaintiffs cite United States v. Green, 33 F. Supp. 2d 203 (W.D.N.Y. 1998), and United States v. Rohm and Haas Co., 939 F. Supp. 1157, 1161-63 (D.N.J. 1996), for the proposition that recoupment claims are impermissible in the rigid statutory

---

5.  This holds true despite the limitation in Rule 13 that "[t]hese rules do not expand the right to assert a counterclaim — or to claim a credit — against the United States or a United States officer or agency." Fed. R. Civ. P. 13(d).

context of CERCLA.  Their assessment overstates the holdings of these cases.  The defendants in Green and Rohm & Haas each sought to offset the government's recovery on the basis of its conduct during remediation of the site at issue.  Green, 33 F. Supp. 2d at 223; Rohm and Haas, 939 F. Supp. at 1162.  Those counterclaims did not "relate directly to the actual pollution of the affected site" and instead were directed "solely to the aftermath."  Am. Color, 858 F. Supp. at 450-53.  Consequently, the defendants failed to establish the first element of any recoupment counterclaim, namely, that it arises from the same transaction or occurrence as the main claim.

Here, by contrast, defendants' counterclaims posit that the Government of the Virgin Islands played some role in bringing about the alleged pollution at issue.  Those counterclaims, as pleaded, arise out of the same transaction or occurrence as plaintiffs' claims and seek relief of the same kind and nature.[6]  They are purely defensive in nature in simply seeking a reduction or offset from any recovery otherwise to be awarded to plaintiffs.  Accordingly, we conclude that plaintiffs are not entitled to sovereign immunity against defendants' counterclaims

---

6.  Plaintiffs speculate that any hazardous materials released from the Virgin Islands sewage system or the Anguilla landfill will be of a drastically different chemical nature than the industrial materials allegedly released by defendants.  They also contend that the locations in which the materials were released may not overlap and that the remediation required with respect to each group of chemicals will be entirely separate.  These questions are not ripe for resolution on the pleadings alone.  We will revisit this issue as needed upon further development of the facts.

under common and territorial law because those counterclaims sound in recoupment.[7]

IV.

In our Memorandum of October 31, 2008 we held that only the Government of the Virgin Islands, as parens patriae, is a proper plaintiff with respect to the common and territorial law claims at issue here. Under CERCLA, by contrast, only the "authorized representative" as designated by the Governor of the Virgin Islands is permitted to "act on behalf of the public as trustee of natural resources to recover for ... damages [to such resources]." 42 U.S.C. § 9607(f)(1). Here that government official is plaintiff Robert Mathes, the commissioner of the DPNR. Plaintiffs now argue that because they sue only as trustees on behalf of the public, they are not "opposing parties" under Rule 13 for purposes of defendants' counterclaims.

Under Rule 13(a), a "compulsory counterclaim" is one that "the pleader has against an opposing party if the claim ... arises out of the transaction or occurrence that is the subject matter of the opposing party's claim ...." Fed. R. Civ. P. 13(a). Where a plaintiff brings suit in only one capacity,

---

7. Some courts have permitted counterclaims under CERCLA §§ 107(a) and 113(f)(1) on a similar theoretical basis. See, e.g., United States v. Atl. Richfield Co., Civ. A. No. 98-408, 2000 WL 33327310, at *3 (S.D. Tex. Dec. 19, 2000); United States v. Iron Mountain Mines, Inc., 952 F. Supp. 673, 678 (E.D. Cal. 1996). Because we concluded earlier that Congress expressly abrogated the sovereign immunity of the Virgin Islands with respect to statutory claims for contribution under CERCLA, we need not address whether the common-law doctrine of recoupment applies to those counterclaims as well.

however, some courts have held that it is not an "opposing party" for purposes of counterclaims premised upon its actions taken while acting in other capacities.  See In re Sunrise Secs. Litig., 818 F. Supp. 830, 835 (E.D. Pa. 1993); Moore's Fed. Practice § 13.50[2][b].  The rationale is to prevent a plaintiff from being unfairly sued in his individual capacity where he initiated the action only in a representative capacity.  See Blanchard v. Katz, 117 F.R.D. 527, 529 (S.D.N.Y. 1987).

The Court of Appeals for the Second Circuit has cautioned that "it will not always be wise to apply the 'opposing party' rule mechanically."  Banco Nacional de Cuba v. Chase Manhattan Bank, 658 F.2d 875, 886 (2d Cir. 1981).  Exceptions are permitted where "principles of equity and judicial economy" dictate resolution of the counterclaims in the same action. Blanchard, 117 F.R.D. at 528-29; see also Chambers v. Cooney, 537 F. Supp. 2d 1248 (S.D. Ala. 2008).  The Court of Appeals for the Eighth Circuit, for example, has deviated from the rule where permitting the counterclaims "avoids a second lawsuit and ensures decision by a district court already familiar with the facts." See First Union Nat'l Bank ex rel. Se. Timber Leasing Statutory Trust v. Pictet Overseas Trust Corp., 351 F.3d 810, 815 (8th Cir. 2003).

Principles of equity and judicial economy compel us to permit defendants' counterclaims in this case despite the limited capacity in which plaintiffs ostensibly bring suit.  It would be unfair to deny defendants the opportunity to seek contribution

from the government bringing suit against them where they contend that that same government is responsible for the contamination at issue. Moreover, resolution of the highly complex factual disputes underlying this case will be more easily accomplished in a single action before one judge rather than in piecemeal proceedings. In sum, we conclude that the "opposing party" rule does not bar defendants' counterclaims.[8]

V.

We find plaintiffs' remaining grounds for dismissal to be without merit.[9] For the reasons set forth above, we will deny the motion of plaintiffs to dismiss the counterclaims of defendants.

---

8. We further note that, to our knowledge, no court has ever applied the "opposing party" rule to bar counterclaims against a state actor suing for damage to natural resources on behalf of its citizens. At least one appellate court has allowed such an action to proceed without discussing the rule. In Berrey v. Asarco Inc., the Quapaw Indian Tribe, suing as parens patriae, sought to hold a mining company liable for natural resource damages under CERCLA. 439 F.3d 636, 640-41 n.1 (10th Cir. 2006). As here, the defendant sought to bring compulsory counterclaims for recoupment alleging that the Tribe contributed to the contamination at issue. The Court of Appeals for the Tenth Circuit held that such claims were permissible. Id. at 643-46.

9. These include the arguments that CERCLA preempts defendants' claims for common law setoff and that those claims fail to satisfy the pleading requirements of Rule 8. We conclude that the common law counterclaims as pleaded are not preempted by CERCLA. We also conclude that those counterclaims, which incorporate the allegations underlying defendants' CERCLA claims, satisfy Rule 8 as recently interpreted by the Supreme Court in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007).