```
              IN THE DISTRICT COURT OF THE VIRGIN ISLANDS
                         DIVISION OF ST. CROIX

COMMISSIONER OF THE DEPARTMENT   :    CIVIL ACTION
OF PLANNING AND NATURAL          :
RESOURCES, ROBERT S. MATHES,     :
et al.                           :
                                 :
         v.                      :
                                 :
CENTURY ALUMINA COMPANY, LLC,    :
et al.                           :    NO. 05-62
```

MEMORANDUM

Bartle, C.J.                                          March 11, 2011

Plaintiffs, Commissioner of the U.S. Virgin Islands Department of Planning and Natural Resources ("DPNR"), Robert S. Mathes, in his capacity as Trustee of Natural Resources of the Territory of the United States Virgin Islands (the "Trustee"), and the Government of the Virgin Islands (the "Government") have filed this multi-count environmental lawsuit against a number of defendants including St. Croix Renaissance Group, LLP ("SCRG").[1] Plaintiffs allege that the defendants have damaged the natural resources of St. Croix by releasing hazardous substances from industrial tracts owned at various times by defendants. The First Amended Complaint seeks damages for harm done to "ground

---

1. The other defendants in this action are Century Alumina Company, LLC ("Century"), Virgin Islands Alumina Company ("Vialco"), St. Croix Alumina, LLC ("SCA"), Lockheed Martin Corporation ("Lockheed"), Alcoa World Alumina, LLC ("Alcoa"), Hovensa, LLC ("Hovensa"), and Hess Oil Virgin Islands Corporation ("HOVIC").

water, surface water, land, air, cultural resources, recreational areas, wetlands, habitat, protected and endangered species, biota, fish, and the estuarine and marine environment."

The First Amended Complaint contains counts for damages under strict liability for abnormally dangerous activity (Count 1), negligence (Count 2), negligence per se (Count 3), and public nuisance (Count 4). It also contains allegations under the Virgin Islands Oil Spill Prevention and Pollution Control Act, 12 V.I.C. § 703 (Count 5) and the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. § 9601 et seq (Count 6).

Now before the court is the motion of defendant SCRG for partial summary judgment that it owns the Alucroix Channel in St. Croix. While the First Amended Complaint does not specifically reference the Alucroix Channel, the Trustee has made it clear that the damages that he is seeking under CERCLA include damages to the natural resources of the Alucroix Channel.

I.

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2); see also Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). A dispute is genuine if the evidence is such that a reasonable jury could return a verdict for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 254

(1986). After reviewing the evidence, the court makes all reasonable inferences from the evidence in the light most favorable to the non-movant. In re Flat Glass Antitrust Litig., 385 F.3d 350, 357 (3d Cir. 2004).

## II.

CERCLA was enacted by Congress in 1980 in response to concerns about hazardous chemical releases threatening the health and beauty of the nation's natural resources and posing great risks to the public. See Exxon Corp. v. Hunt, 475 U.S. 355 (1986). Under 42 U.S.C. § 9607(a)(C), a state's trustee may sue for damages to the natural resources of the state. See id. Such natural resource are defined as: "land, fish, wildlife, biota, air, water, ground water, drinking water supplies, and other such resources belonging to, managed by, held in trust by, appertaining to, or otherwise controlled by the United States ... any State or local government, any foreign government, [or] any Indian tribe..." 42 U.S.C. § 9601(16). The term "state" includes territories of the United States such as the U.S. Virgin Islands. See 42 U.S.C. § 9601(27).

Both the Trustee and the Government of the Virgin Islands are plaintiffs in this lawsuit. The Trustee holds the statutory authority to bring natural resource damages claims under CERCLA. See 42 U.S.C. § 1907(f)(2)(B). The Government of the Virgin Islands has the authority to bring the other claims pleaded in the First Amended Complaint, which are not at issue in this motion.

-3-

As set forth in the First Amended Complaint and undisputed by defendants, the industrial tracts from which defendants are alleged to have released hazardous substances are known collectively as the South Shore Industrial Area.  They are located within the central plain on the south shore of St. Croix.  The tracts abut the Caribbean Sea on their southern boundary, Route 68 on their northern boundary, and Route 62 on their eastern boundary.  The Area contains an eastern tract which is occupied by an oil refinery and a western tract on which once operated an alumina refinery.  Beneath the South Shore Industrial Area is the Kingshill Aquifer.  The Fairplains and Bethlehem Well Fields, which draw groundwater from the Kingshill Aquifer, are directly adjacent to the western border of the western tract.  The Barren Spot Well Field is adjacent to the oil refinery on its northern border.  The Alucroix Channel extends from the South Shore Industrial Area into the Caribbean Sea.

### III.

SCRG contends that the Trustee cannot recover any damages to the natural resources of the Alucroix Channel under CERCLA because SCRG owns the Channel and thus it is not a natural resource "belonging to" or "managed by, held in trust by, appertaining to, or otherwise controlled by" the Virgin Islands.[2]

---

2. The court has previously granted partial summary judgment on the ground that the several of the CERCLA claims were barred by the statute of limitations.  The remaining CERCLA claims (Count 6) are presently limited to recovery for damages:  from losses to marine life caused by discharges in excess of territorial
(continued...)

42 U.S.C. § 9601(16).  The following facts are either undisputed or presented in the light most favorable to the Trustee.

The relevant events for present purposes began almost 250 years ago.  In 1766, Lieutenant Colonel Gottfried Krause, a landowner in St. Croix, wrote to Christian VII, the King of Denmark, to request that the King grant him title to a "salt water pan (called Lagoon)" in St. Croix, which at the time was part of the King's domain.  The King, granting his request, promulgated a "resolution" which provided that:

> Whereas the governor-general and the Privy Council of St. Croix have stated that the so-called lagoon referred to, and said consist of a water, standing through a narrow inlet, in connection with the narrow slip of land appertaining to it, cannot be of any use to Us, We most graciously present lieutenant-colonel Krause with it and deliver him a deed of assignment thereon, that <u>this land and water</u> hereafter may be included in the land, acquired by and belonging to him as the plantation no. 32 of King's Quarter - provided that no third persons be damaged in their property.

(emphasis added).  This property thereafter passed to Krause's heirs, I.G. Krause and M.L. Krause, over time becoming known as "Krause Lagoon."  By the time that Denmark sold the Virgin Islands to the United States in 1917, the Lagoon had devolved to the West Indian Sugar Factory, Limited, a Joint Stock Company.

---

2.(...continued)
discharge permits by defendants Hess and Hovensa; losses to on-site groundwater caused by the gradual erosion of red mud by defendants Century, Vialco, and Lockheed Martin; and losses to on-site groundwater caused by the gradual erosion of red mud and all losses caused by the March 2002 release of red mud into the Alucroix Channel by defendants SCA, Alcoa, and SCRG.

Sometime thereafter, according to the record which is not totally clear, the property came into the possession of the Government of the Virgin Islands, which used it as a public dump for some years.

On February 20, 1962, the Fourth Legislature of the Virgin Islands approved Act. No. 814, which authorized the conveyance of several parcels of land, including the Krause Lagoon, to Harvey Alumina Virgin Islands, Inc. ("Harvey") for the purpose of the construction of an alumina refinery.  The Act included the conveyance of "<u>the bed and lands covered by the body of water known and recorded under Matricular No. 35 as Krause (also as Krausses, Crouses and Crauses) Lagoon</u> located in the King's and Queen's Quarters of St. Croix and any lands, marshes, islets or swampland surrounded by any such lagoon or its adjacent tidal flats or partly by such Lagoon and partly by the Caribbean Sea" (emphasis added).  At the time, the parcels of land contained no industrial development, no channel, and no port.

Act No. 814 also incorporated by reference the agreement between Harvey and the Government.  The agreement specified that the conveyance of land would include "without limitation (i) all mineral, riparian and littoral rights thereunto pertaining, (ii) all adjacent tidal flats, lagoons, shorelands and beaches, and (iii) all structures, substructures and improvements, if any, thereon."  The agreement contemplated that Harvey would construct a "channel and turnabout area" for access to the property.  It also delineated the various benefits

and financial subsidies that the Government would bestow upon Harvey for the economic development of this parcel, including pre-approval of the parcel for zoning requirements, exemptions from various taxes, fees, and duties, and reimbursement to Harvey from the Government for the costs of constructing the channel.

After Act No. 814 became law, the Governor of the Virgin Islands signed a deed on May 16, 1962 transferring title to Krause Lagoon and other parcels to Harvey.  The deed provided that:

> THIS INDENTURE, made this 16th day of May, 1962 by and between the Government of the Virgin Islands, acting by and through the Governor of the Virgin Islands, party of the first part; and Harvey Aluminum (Incorporated), a corporation organized and existing under the laws of the State of California, party of the second part:
>
> WITNESSETH, THAT:
>
> WHEREAS, The Government of the Virgin Islands has entered into an Agreement dated as of January 1, 1962, with Harvey Alumina Virgin Islands, Inc., a corporation organized and existing under the laws of the Virgin Islands, which Agreement relates to an alumina plant development in the Virgin Islands and provides that The Government of the Virgin Islands will convey certain of its properties described in such Agreement to the designee specified by said Harvey Alumina Virgin Islands, Inc.; and
>
> WHEREAS, Harvey Aluminum (Incorporated) has been duly specified by Harvey Alumina Virgin Islands, Inc. as the designee to which such properties are to be conveyed;
>
> NOW THEREFORE, The Government of the Virgin Islands, in consideration of the premises and for other good and valuable consideration, receipt whereof is hereby

acknowledged, does hereby remise, release, sell, convey and quitclaim unto Harvey Aluminum (Incorporated), and to its successors and assigns forever, all the right, title, interest, claim and demand which The Government of the Virgin Islands has in and to <u>the following described land</u> situated on the South Coast of the Island of Saint Croix, Virgin Islands, about midway between the East and West extreme ends, and about eight miles from the town of Christiansted, <u>to wit</u>:

    The bed and lands covered by the body of water known and recorded under Matricular No. 35 as Krause (also as Krausses, Crouses and Crauses) Lagoon located in the King's and Queen's Quarters of St. Croix and any lands, marshes, islets or swampland surrounded by such Lagoon or its adjacent tidal flats or partly by such Lagoon and partly by the Caribbean Sea, it being intended that the entire area of such Lagoon, including any extensions or projections of Estates Anguilla and Annaberg and Shannon Grove into such Lagoon and the Caribbean Sea, and also including all parts of such Lagoon encompassed by the low water mark of the tidewater of said Lagoon and the Caribbean Sea, shall be included in the lands conveyed hereby.

    INCLUDING, without limitation, (i) all mineral, riparian and littoral rights thereunto pertaining, (ii) all adjacent tidal flats, lagoons, shorelands and beaches, and (iii) all structures, substructures and improvements, if any, on the above described lands.

    Together with all and singular the hereditaments and appurtenances thereunto belonging, or in any wise appertaining, and the reversion and reversions, remainder and remainders, rents, issues and profits thereof and all the estate, right, title, interest, claim or demand whatsoever, of the Government of the Virgin Islands, both in law and in equity or otherwise, in and to or out of, <u>the above described lands</u>, with the hereditaments and appurtenances.

(emphases added). Following this transfer, the Office of the Virgin Islands Attorney General did a title report for Krause Lagoon as required by the agreement with Harvey. The report concluded that title to the lagoon had become separated from title to the surrounding lands on September 1, 1855, when John Wakefield conveyed the adjacent Estates Annaberg and Shannon Grove to E.B. Tinling without including the acreage of the lagoon itself in the deed. The Attorney General opined that:

> Krause Lagoon remaining the property of John Wakefield in 1855, and since then unclaimed by any heirs, is properly subject to escheat to the Government of the Virgin Islands. The last proviso in Annex 'A' to the Harvey Alumina contract, relating to the taking of steps by the Government (insular) to obtain and confirm fee simple absolute title to Krause Lagoon embraces the institution of escheat proceedings under existing law.

The report concluded that:

> as a matter of existing law, the Government of the Virgin Islands may properly move to clear title to the Lagoon in fulfillment of its obligation under the provisions of Annex 'A' of the Harvey Alumina contract. The preceding reasoning is of course premised on the assumption that by 1855 Krause Lagoon became separated in ownership from that of Estates Annaberg and Shannon Grove. The alternative premise is that the Lagoon passed in the chain of title down to the last private owner, H. Hingham Hark.

In order to allay any title concerns, the Government obtained a quitclaim deed to Krause Lagoon from H. Hingham Hark on January 11, 1963. That deed conveyed to the Government "all my right, title and interest in and to the following: <u>the bed and lands covered by the body of water</u> known as Krause Lagoon

-9-

(also known as Krausses, Crouses and Crauses), Matricular No. 35, King's Quarters, St. Croix, Virgin Islands" (emphasis added). The Governor then signed a second deed transferring the area of the Krause Lagoon to Harvey on January 15, 1963. This deed used identical language to language contained in the deed signed on May 16, 1962. It conveyed "<u>the following described land</u> situated on the South Coast of the Island of Saint Croix, Virgin Islands, about midway between the East and West extreme ends, and about eight miles from the town of Christiansted, <u>to wit</u>...," followed by the lengthy description quoted above.[3]

  Thereafter, Harvey began construction of the alumina refinery and other appurtenances on the property. The agreement between the Government and Harvey, which was ratified by Act No. 814, included a section on an "Access Channel" to the property, which provided that:

> Creation of the alumina plant development depends upon safe, convenient and direct access by sea to and from the Plant and Related Facilities. It is contemplated that a channel and turnabout area (herein called "the Channel Project") to provide such access will be dredged and completed, pursuant to the Channel project provisions set forth in Annex C attached hereto and made a part hereof. Such Channel Project provisions shall not be a condition of any obligation of the parties under any other part of this Agreement, however.

---

3. Our Court of Appeals has previously upheld the legality of this transfer of property to Harvey. <u>See</u> <u>Smith v. Government of Virgin Islands</u>, 329 F.2d 135 (3d Cir. 1964).

-10-

Annex C, entitled "Channel Project Provisions," lays out the terms of Harvey's future construction of the channel.  It allocates responsibilities between the Government and Harvey for design of the channel, provides that the Government shall have a right to construct a public pier in the turnabout area, designates the construction as "an essential public project" for tax purposes, and sets out the terms of other payments to the Government such as excises, duties, fees, and reimbursements.

This access channel and turnabout area is now known as the Alucroix Channel.  Based on the photographs in the record, its construction transformed Krause Lagoon into a deep-water access.  This channel of navigable waters extends inland from the Caribbean Sea for some 7,000 feet into the alumina refinery property.

In the intervening years, ownership of the alumina refinery property has passed through a variety of hands, including defendants Lockheed Martin, Vialco, Century, SCA, and Alcoa.  SCRG is the current owner of the alumina refinery property.[4]

IV.

Section 107(f)(1) of CERCLA provides that:

> In the case of an injury to, destruction of,
> or loss of natural resources ... liability
> shall be to the United States Government and
> to any State for natural resources within the

---

4.  SCRG is a limited liability partnership, organized under the laws of the State of Delaware.  The partners are Brownfield Recovery Corporation and Energy Answers Corporation.

> State or belonging to, managed by, controlled by, or appertaining to such State ...   Sums recovered by a State as trustee under this subsection shall be available for use only to restore, replace, or acquire the equivalent of such natural resources by the State.

42 U.S.C. § 9607(f)(1).  As noted above, CERCLA defines "natural resources" to mean "land, fish, wildlife, biota, air, water, ground water, drinking water supplies, and other such resources belonging to, managed by, held in trust by, appertaining to, or otherwise controlled by the United States ... any State or local government..."  42 U.S.C. § 9601(16).

To succeed on its motion for partial summary judgment, SCRG must establish that there is no genuine issue as to any material facts that it owns the Alucroix Channel and therefore that is natural resources do not belong to the Virgin Islands and are not "managed by, controlled by, or appertaining to" the Virgin Islands.  SCRG contends that the deeds conveying the alumina refinery property to Harvey Aluminum, Inc. in 1962 and 1963 conveyed the area now know as the Alucroix Channel, making it the private property of Harvey Aluminum, Inc. and now of SCRG.

While the King of Denmark conveyed both the land and water of what came to be known as Krause Lagoon to Gottfried Krause in 1766, the language of the May 16, 1962 and January 15, 1963 deeds conveying the property from the Government of the Virgin Islands to Harvey is clearly more limited.  It describes only the conveyance of <u>land</u>, not the conveyance of the <u>water</u> of, on, or over the land.  The deeds convey "<u>the following described</u>

-12-

land situated on the South Coast of the Island of Saint Croix, Virgin Islands, about midway between the East and West extreme ends, and about eight miles from the town of Christiansted, to wit..." and then proceeds to describe the land being so conveyed (emphasis added).  "To wit" is defined by the Merriam-Webster Dictionary as "that is to say; namely."  The clause following "to wit" merely describes the clause preceding it, in this case, the phrase "the following land."  Nowhere does the deed conveying the property from the Government to Harvey convey the actual waters of Krause Lagoon.  Although the description following the "to wit" clause does make mention of the inclusion of *adjacent* lagoons in the conveyance, it is limited by what proceeds it.

SCRG argues that no "water" existed at the time of the closing because the Alucroix Channel had not yet been dredged. It contends that, in the absence of pre-existing water, the deed could not make specific mention of the conveyance of the water. However, the deed does describe the land conveyed as that being "covered by the body of water known and recorded under Matricular No. 35 as Krause (also as Krausses, Crouses and Crauses) Lagoon" (emphasis added).  Furthermore, drawings and photographs taken prior to the dredging of the Alucroix Channel depict water in the Krause Lagoon.

On the record before us, it is undisputed that the land described as Krause Lagoon in the deeds from the Government to Harvey in 1962 and 1963 is now private property belonging to SCRG and wholly within its control.  Thus, the Trustee cannot recover

-13-

damages under CERCLA for injury to the natural resources of the Alucroix Channel to the extent that those resources consist of the <u>land</u> as described in those deeds. SCRG is not entitled to summary judgment beyond this limitation and is not entitled to summary judgment on its claim of ownership of the water of the Alucroix Channel or the water of the Krause Lagoon.