```
             IN THE DISTRICT COURT OF THE VIRGIN ISLANDS
                         DIVISION OF ST. CROIX

COMMISSIONER OF THE DEPARTMENT    :       CIVIL ACTION
OF PLANNING AND NATURAL           :
RESOURCES, ALICIA V. BARNES,      :
et al.                            :
                                  :
             v.                   :
                                  :
CENTURY ALUMINUM COMPANY,         :
et al.                            :       NO. 05-62
```

MEMORANDUM

Bartle, J.                                              June 13, 2012

Plaintiffs, Alicia V. Barnes, Commissioner of the U.S. Virgin Islands Department of Planning and Natural Resources (the "Commissioner"), and the Government of the Virgin Islands (the "Government") have filed this multi-count environmental lawsuit against defendants who at various times owned portions of an industrial tract in Kingshill, St. Croix on which both an alumina refinery and an oil refinery have operated. They are Century Aluminum Company ("Century"), Virgin Islands Alumina Corporation ("VIALCO"), St. Croix Alumina, LLC ("SCA"), Lockheed Martin Corporation ("Lockheed"), Alcoa World Alumina, LLC, ("Alcoa"), St. Croix Renaissance Group, LLLP ("SCRG"), HOVENSA, LLC ("HOVENSA"), and Hess Oil Virgin Islands Corporation ("HOVIC").[1]

---

1. Century was named a defendant in this action, but the court granted summary judgment in its favor on November 30, 2011. See Dep't of Planning & Natural Res. v. Century Alumina Co., No. 05-62, 2011 U.S. Dist. LEXIS 137431 (D.V.I. Nov. 30, 2011). On
(continued...)

Before the court is the motion of defendants Lockheed, joined by HOVENSA and HOVIC (the "Refinery Defendants"), to strike three documents in which plaintiffs made disclosures pursuant to Rule 26(a) of the Federal Rules of Civil Procedure at or after the end of the period set by the court for deposing fact witnesses.[2]  In essence, defendants seek to strike the names of newly identified witnesses so as to preclude them from testifying at trial.

I.

Under the then-applicable Sixth Scheduling Order in this case, which was filed over seven years ago, the period for deposing fact witnesses finally ended on December 16, 2011.[3]  On

---

1.(...continued)
February 13, 2012, the court approved a settlement between plaintiffs and defendants SCA, Alcoa, and SCRG that resolved all claims among these parties.  See Dep't of Planning & Natural Res. v. Century Aluminum Co., No. 05-62, 2012 U.S. Dist. LEXIS 17546 (D.V.I. Feb. 13, 2012).  Thus, plaintiffs' claims remain pending against VIALCO, Lockheed, HOVENSA, and HOVIC.  The Virgin Islands Port Authority ("VIPA") and the Virgin Islands Waste Management Authority ("VIWMA") are third-party defendants sued by defendants VIALCO and Lockheed and former defendant Century for contribution under CERCLA and Virgin Islands law.  These defendants' claims against VIPA and VIWMA are not implicated by the motion now before the court.

2.  Lockheed filed its motion to strike the supplemental Rule 26(a) disclosures at issue on February 27, 2012.  On March 6, 2012, HOVENSA and HOVIC joined this motion.

3.  Under the Sixth Scheduling Order, the parties were permitted to perform property inspections under Rule 34(a)(2) of the Federal Rules of Civil Procedure on or before January 27, 2012. Discovery related to expert witnesses is presently ongoing pursuant to the terms of the Seventh Scheduling Order entered on February 7, 2012.

that date, plaintiffs served defendants with a document entitled "Plaintiffs' Supplemental Rule 26(a)(1) Disclosures and Ninth Supplemental Rule 26 Self-Disclosure Document Production" ("Ninth Disclosure").  In this document, plaintiffs state, "In addition to the names provided in Plaintiffs' Rule 26(a)(1) Disclosures served on February 17, 2009, the following persons are likely to have discoverable information that Plaintiffs may use to support their claims."  Plaintiffs then list the names of 118 individuals.  As to the first individual named in this Ninth Disclosure, Kenny Schuster, plaintiffs simply state that he works for a company called Schuster's Services but do not otherwise identify what relevant information he may possess.

The remaining 117 individuals are described as "Former workers at the Alumina Facility who may have information regarding disposals or discharges, and/or procedures for control and detection of disposals or discharges."[4]  Plaintiffs apparently discovered the names of these 117 former employees from a May 1980 newsletter circulated by Lockheed's predecessor, Martin Marietta Aluminum, Inc. ("Martin Marietta"), which operated the alumina refinery on the industrial tract at issue

---

4.  The "disposals" and "discharges" referenced in plaintiffs' Ninth Disclosure refer to the disposal and discharge into the environment of a deleterious byproduct of alumina refining known both as bauxite residue or "red mud."  See Dep't of Planning & Natural Res. v. Century Aluminum Co., No. 05-62, 2012 U.S. Dist. LEXIS 17546, at *12 (D.V.I. Feb. 13, 2012).

-3-

from 1972 to 1985.[5]  According to plaintiffs, they obtained this newsletter in December 2011 shortly before serving defendants with the Ninth Disclosure.  The newsletter names various individuals who had five- or ten-year service anniversaries with Martin Marietta in January and February 1980.  Neither the newsletter nor the Ninth Disclosure states what positions these 117 individuals held with Martin Marietta.[6]  Plaintiffs provide the addresses for only Schuster and two of the 117 former Martin Marietta employees.[7]

On February 17, 2012, plaintiffs served defendants with their "Tenth Supplemental Rule 26(a)(1) Disclosures" ("Tenth Disclosure").  The Tenth Disclosure names two additional witnesses, Arnold Golden and Louis Maldonado, who plaintiffs stated "are likely to have discoverable information that Plaintiffs may use to support their claims."  The Tenth

---

5.  For a more detailed discussion of the ownership and operations of the alumina refinery over time, see Dep't of Planning & Natural Res. v. Century Aluminum Co., No. 05-62, 2012 U.S. Dist. LEXIS 17546, *10-*14 (D.V.I. Feb. 13, 2012).

6.  The newsletter does recite the names and positions of five managerial-level Martin Marietta employees, but these five individuals are not listed in plaintiffs' Ninth Disclosure.

7.  Four days later, on December 20, 2011, plaintiffs served a "Corrected Supplemental Rule 26(a)(1) Disclosures and Ninth Supplemental Rule 26 Self-Disclosure Document Production."  The only salient difference between the corrected and uncorrected versions pertains to the Bates stamp numbers that plaintiffs used to describe certain documents.  No defendant has objected to the plaintiffs' identification of these documents in the Ninth Disclosure.  Indeed, according to plaintiffs, the relevant documents listed in the Ninth Disclosure had previously been produced to defendants during discovery.

Disclosure does not otherwise describe the information in the possession of Golden and Maldonado.  One month earlier, on January 18, 2012, plaintiffs submitted declarations from these men in connection with their opposition to a motion of the Refinery Defendants for summary judgment.  These declarations discuss the quality of ground water beneath a portion of the industrial tract on which the Refinery Defendants' oil refinery is now situated.

## II.

Rule 26(a) of the Federal Rules of Civil Procedure requires parties voluntary to disclose certain categories of information in most civil cases.  "The purpose of voluntary disclosures is to streamline discovery by 'forc[ing] parties to exchange their basic, substantive evidence, without resort to the complications, inefficiency, and litigiousness of discovery practice.'"  <u>Patel v. Havana Bar</u>, No. 10-1383, 2011 U.S. Dist. LEXIS 139180, at *19-*20 (E.D. Pa. Dec. 5, 2011) (quoting <u>McDaid v. Stanley Fastening Sys., LP</u>, No. 07-709, 2008 U.S. Dist. LEXIS 57844, at *4 (E.D. Pa. July 28, 2008)).  Under Rule 26(a), each party is required to disclose, among other things, "the name and, if known, the address and telephone number of each individual likely to have discoverable information—along with the subjects of that information—that the disclosing party may use to support its claims or defenses, unless the use would be solely for impeachment."  Fed. R. Civ. P. 26(a)(1)(A)(i).  Typically, this information must be disclosed within 14 days of the parties' Rule

26(f) discovery planning conference. Fed. R. Civ. P. 26(a)(1)(C). Each party "must make its initial disclosures based on the information then reasonably available to it." Fed. R. Civ. P. 26(a)(1)(E).

The duty of a party to make voluntary disclosures to its adversary does not end once the Rule 26(a) disclosures are exchanged. As litigation progresses, a party is required to supplement its disclosures "in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing." Fed. R. Civ. P. 26(e)(1)(A); <u>see</u> Fed. R. Civ. P. 26(a)(2)(E).

Rule 37 authorizes the court to impose sanctions for a party's failure to comply with the disclosure requirements of Rule 26(a). Specifically, Rule 37(c)(1) provides:

> If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless. In addition to or instead of this sanction, the court, on motion and after giving an opportunity to be heard:
> (A) may order payment of the reasonable expenses, including attorney's fees, caused by the failure;
> (B) may inform the jury of the party's failure; and
> (C) may impose other appropriate sanctions, including any of the orders listed in Rule 37(b)(2)(A)(i)-(vi).

The court must consider four factors before excluding witnesses due to a party's failure to comply with the discovery rules. We examine the "prejudice or surprise" to the party against whom the evidence would be admitted, the ability to cure that prejudice, "the extent to which allowing the evidence would disrupt the orderly and efficient trial of the case or other cases in the court," and "bad faith or wilfulness" on the part of the disclosing party in "failing to comply with a court order or discovery obligation." Nicholas v. Penn. State Univ., 227 F.3d 133, 148 (3d Cir. 2000). In applying these factors, we may consider the importance to the disclosing party of the proposed witnesses' testimony. Konstantopoulos v. Westvaco Corp., 112 F.3d 710, 719 (3d Cir. 1997).

### III.

Defendants argue that plaintiffs' Ninth and Tenth Disclosures were untimely for the purposes of Rule 26(e). They request that the court enforce Rule 37 and forbid plaintiffs from calling as witnesses at trial any of the 120 individuals identified in the Ninth and Tenth Disclosures.

The court finds that in identifying 118 new witnesses in their Ninth Disclosure, plaintiffs failed to supplement their Rule 26(a) disclosures in a timely manner as required by Rule 26(e). Plaintiffs argue that their Ninth Disclosure was timely within the meaning of Rule 26(e) because it was served on the last day of the period for deposing fact witnesses. This argument is unavailing. The purpose of Rule 26(a) disclosures is

to give adversaries fair notice of what evidence upon which the disclosing party may rely so that the adversary may take appropriate discovery. See Patel, 2011 U.S. Dist. LEXIS 139180, at *19-*20. Identifying new witnesses for the first time on the last day of the period for deposing such witnesses is not timely for the purposes of Rule 26(e) because it deprives the disclosing party's adversary of the opportunity to use the discovery process to learn what testimony the named witnesses might give.

We next consider whether any of the 118 newly-identified witnesses in the Ninth Disclosure should be excluded at trial under Rule 37. See Nicholas, 227 F.3d at 148. With respect to the 117 former Martin Marietta employees identified in the Ninth Disclosure, the court finds that defendant Lockheed would be prejudiced by allowing plaintiffs to call any of these former employees as witnesses at trial. Requiring Lockheed to interview these numerous individuals or to depose them out of time would pose a significant cost and burden during a phase of the litigation in which the parties are to be directing their efforts at discovery related to expert witnesses. This is particularly true because neither Lockheed nor plaintiffs know what these 117 individuals may say. See Konstantopoulos, 112 F.3d at 719. Indeed, plaintiffs did not interview any of the 117 individuals before listing them in the Ninth Disclosure.

Plaintiffs argue that their belated identification of witnesses in the Ninth Disclosure is justified within the meaning of Rule 37(c)(1) because defendant Lockheed "stonewalled"

-8-

plaintiffs during discovery. Plaintiffs assert that Lockheed should have identified the 117 former Martin Marietta employees in response to plaintiffs' interrogatories. The interrogatories at issue asked Lockheed to identify former Martin Marietta employees who performed specific functions at the alumina refinery or who had specific knowledge about the refinery's operation and disposal of waste products. Plaintiffs' interrogatories did not ask Lockheed to identify all former Martin Marietta employees. In response to plaintiffs' interrogatories, Lockheed identified only a few former Martin Marietta employees. Plaintiffs, however, did not bring a motion to compel more complete answers. Moreover, nothing in the Ninth Disclosure or the Martin Marietta newsletter suggests that any of the 117 former Martin Marietta should have been identified in Lockheed's answers to plaintiffs' interrogatories. All that is known of the 117 individuals listed in the Ninth Disclosure is that they had worked for Martin Marietta for five or ten years in 1980.[8]

Finally, plaintiffs suggest that the prejudice to Lockheed can be mitigated by permitting plaintiffs to call as witnesses only four or five of the 117 former Martin Marietta employees named in the Ninth Disclosure. Plaintiffs do not state

---

8. In their Ninth Disclosure, plaintiffs state that these 117 individuals "may have information regarding disposals or discharges, and/or procedures for control and detection of disposals or discharges." Of course, the same could be said of any former Martin Marietta employee.

which four or five individuals they propose to call, suggest a time by which they will have made that determination, or disclose what testimony they expect this limited subset of witnesses to give. The court is unwilling to burden Lockheed with additional fact discovery during the now-pending expert discovery period when the testimony of these potential witnesses is completely speculative.

      The court reminds the parties that this action has now been pending for over seven years and there has been a lengthy fact discovery period in this case. The court recognizes that this litigation has been complex and time-consuming for all parties, but the period for conducting fact discovery in this case opened on August 27, 2010 and closed on December 16, 2011.[9] (See Dep't of Planning & Natural Res. v. Century Alumina Co., No. 05-62 (D.V.I. Dec. 15, 2008) (third scheduling order); id. (D.V.I. Oct. 25, 2011) (sixth scheduling order).) Moreover, the parties have stipulated that discovery taken in a related action will be admissible in this case. In that related action, the parties were permitted to conduct fact discovery between May 20, 2009 and February 26, 2010. (See Dep't of Planning & Natural

---

9. It also appears that the parties were permitted to take fact discovery between December 15, 2008 when Magistrate Judge Cannon entered the Third Scheduling Order and May 20, 2009 when the undersigned vacated that order. (See Dep't of Planning & Natural Res. v. Century Alumina Co., No. 05-62 (D.V.I. Dec. 15, 2008) (third scheduling order); id. (D.V.I. Aug. 27, 2010) (order permitting parties to issue interrogatories and requests for production of documents).) From the docket, it appears that only an exchange of initial disclosures occurred during this period.

Res. v. St. Croix Renaissance Grp., LLLP, No. 07-114 (D.V.I. May 20, 2009) (first scheduling order); id. (D.V.I. Feb. 9, 2010) (third scheduling order).)

In the seven years since this litigation began, plaintiffs have had ample time to uncover factual support for their claims.  The court notes that in the report of the parties' discovery planning conference submitted on August 20, 2010 pursuant to Rule 26(f), multiple parties, including plaintiffs, proposed a fact discovery period expiring on June 15, 2011.

It is also significant that plaintiffs represent that they uncovered the Martin Marietta newsletter through independent investigation and not through formal discovery.  Plaintiffs have been able to conduct independent research with respect to their claims since prior to filing their complaint in 2005.  They retained this ability even during periods when fact discovery was stayed by the court.  If plaintiffs desired to identify and interview all former Martin Marietta employees, the time to do so was prior to the close of fact discovery.

Accordingly, the court finds that allowing plaintiffs to call as witnesses at trial any of the 117 former Martin Marietta employees named in the Ninth Disclosure would prejudice Lockheed and would disrupt the discovery plan instituted by the court for the "just, speedy, and inexpensive" conclusion of this litigation.  Fed. R. Civ. P. 1.  Plaintiffs have offered no suitable means for limiting the prejudice to Lockheed.  The court will enforce Rule 37 and disallow plaintiffs from calling as

trial witnesses any of the 117 former Martin Marietta employees named in the Ninth Disclosure.

As to Kenny Schuster, the remaining individual named in the Ninth Disclosure, plaintiffs assert in their brief that the company, Schuster's Services,[10] "has been a well-known provider of water to St. Croix for decades." In their initial Rule 26(a) disclosures in February 2009, plaintiffs disclosed the company and Lowell Schuster as having discoverable information related to ground water contamination. In their Ninth Disclosure, plaintiffs do not state what information Kenny Schuster may have that they will use to support their claims or why Lowell Schuster could not testify to such information. Plaintiffs also have not explained when they became aware that Kenny Schuster had information they may use to support their claims.

The court finds that defendants will be prejudiced if plaintiffs are permitted to call Kenny Schuster as a trial witness. Notwithstanding that plaintiffs disclosed him as a witness at the end of the fact discovery period, plaintiffs have not given either defendants or the court any suggestion as to what he may say on the witness stand. The court will not impose on defendants the burden of interviewing or deposing a witness named on the last day of discovery without some indication that his testimony is meaningful to the litigation at hand. In an

---

10. In their brief, plaintiffs refer to the company as "Schuster's Water Service," but refer to it in their initial Rule 26(a) disclosures and the Ninth Disclosure as "Schuster's Services."

-12-

action that has been pending for over seven years, the court expects that the testimony of potential witnesses could be described with great specificity on the last day of fact discovery.  Thus, pursuant to Rule 37, we also will prohibit plaintiffs from calling Kenny Schuster as a trial witness.

With respect to the Tenth Disclosure, plaintiffs formally identified Arnold Golden and Louis Maldonado as potential witnesses on February 17, 2012.  One month earlier, on January 18, 2012, plaintiffs had filed declarations from these two individuals in opposition to a motion of the Refinery Defendants for summary judgment.  Plaintiffs concede that they did not identify Golden and Maldonado as witnesses any time prior to December 16, 2011.  Thus, plaintiffs failed to disclose these individuals as potential witnesses within the time required by Rule 26(e).

Plaintiffs argue that their identification of Golden and Maldonado is justified in light of events that transpired after December 16, 2011, the last day of the period for deposing fact witnesses.  On January 4, 2012, plaintiffs deposed Rene Sagebien, who had been ill and unavailable for a deposition during the latter portion of the relevant discovery period.[11]  He testified that in the past the ground water extracted from the

---

11.  The court does not know when the Refinery Defendants identified Sagebien as a potential witness or when he became ill.

well in Estate Hope was too salty to drink.[12]  Subsequently, plaintiffs identified Golden and Maldonado as witnesses who could rebut Sagebien's testimony on this point.  In their declarations, these men explain that the wells in Estate Hope supplied potable water to a small village located on land on which the oil refinery now stands.

Plaintiffs maintain that their identification of Golden and Maldonado as witnesses after the close of fact discovery is "substantially justified" or "harmless" within the meaning of Rule 37(c)(1) because Sagebien's testimony was unforseen.  We are unpersuaded.  The court doubts that January 4, 2012, the date of Sagebien's deposition, was the first time plaintiffs were aware they would require evidence regarding the quality, including the salinity, of the ground water beneath the oil refinery property.  Unlike the witnesses named in the Ninth Disclosure, the subject of the proposed trial testimony of Golden and Maldonado is known because it is revealed in their declarations.  Nevertheless, in the court's view, the prejudicial burden on the Refinery Defendants of deposing these individuals after the time provided in the court's scheduling orders for that purpose warrants their

---

12.  From the deposition transcripts before the court, it is impossible to tell the period of time about which Sagebien was testifying.  Presumably the water in the well in Estate Hope and the ground water at issue in this litigation are related, but the relationship is not explained in the record before us.  We also note that the testimony at issue spanned three pages of a deposition transcript exceeding 200 pages.  Thus, we infer that his testimony regarding ground water quality was only a minor component of his deposition testimony.

exclusion pursuant to Rule 37.  Like Lockheed, the Refinery Defendants must now be concerned with expert discovery.  If plaintiffs desired to locate non-expert witnesses who could testify about water quality in the relevant geographic area, they have had seven years since this litigation began in which to do so.  For more than a year of that time, they have had the tools of formal discovery to aid them in their search.  Plaintiffs must stand on the witnesses they identified during the appropriate discovery period.

Accordingly, the court will grant the motion of Lockheed and the Refinery Defendants to exclude the testimony of the 120 witnesses named in plaintiffs' Ninth and Tenth Disclosures.