```
           IN THE DISTRICT COURT OF THE VIRGIN ISLANDS
                      DIVISION OF ST. CROIX

COMMISSIONER OF THE DEPARTMENT    :       CIVIL ACTION
OF PLANNING AND NATURAL           :
RESOURCES, ALICIA V. BARNES,      :
et al.                            :
                                  :
           v.                     :
                                  :
CENTURY ALUMINUM COMPANY,         :
et al.                            :       NO. 05-62
```

MEMORANDUM

Bartle, J.                                          September 26, 2012

Before the court is the motion of defendant Lockheed Martin Corporation ("Lockheed") to amend its answer to add the affirmative defense of assumption of risk.

In 2005, plaintiffs, Alicia V. Barnes, Commissioner of the U.S. Virgin Islands Department of Planning and Natural Resources (the "Commissioner"), and the Government of the Virgin Islands (the "Government") initiated this multi-count environmental lawsuit against defendants who at various times owned portions of an industrial tract in Kingshill, St. Croix on which both an alumina refinery and an oil refinery have operated. They are Century Aluminum Company ("Century"), Virgin Islands Alumina Corporation ("VIALCO"), St. Croix Alumina, LLC ("SCA"), Lockheed, Alcoa World Alumina, LLC, ("Alcoa"), St. Croix

Renaissance Group, LLLP ("SCRG"), HOVENSA, LLC ("HOVENSA") and Hess Oil Virgin Islands Corporation ("HOVIC").[1]

The six counts in the first amended complaint relate to alleged environmental damage allegedly caused by the defendants' operation of the two refineries.  In Count I, the Government of the Virgin Islands alleges that defendants are strictly liable for the environmental damage because they engaged in an abnormally dangerous activity.  The Government avers in Count II that defendants are liable for environmental damage due to their negligence and in Count III that defendants acted negligently per se by failing to comply with certain Virgin Islands environmental laws and an order from the federal Environmental Protection Agency.  Count IV pleads that the defendants' discharge of certain chemicals constitutes a public nuisance.  Count V asserts defendants' liability to the Government for environmental damage under the Virgin Islands Oil Spill Prevention and Pollution Control Act, 12 V.I.C. § 701, et seq.  Finally, in Count VI, the

---

1. Century was named a defendant in this action, but the court granted summary judgment in its favor on November 30, 2011.  See Dep't of Planning & Natural Res. v. Century Alumina Co., No. 05-62, 2011 U.S. Dist. LEXIS 137431 (D.V.I. Nov. 30, 2011).  On February 13, 2012, the court approved a settlement between plaintiffs and defendants SCA, Alcoa, and SCRG that resolved all claims among these parties.  See Dep't of Planning & Natural Res. v. Century Aluminum Co., No. 05-62, 2012 U.S. Dist. LEXIS 17546 (D.V.I. Feb. 13, 2012).  Thus, plaintiffs' claims remain pending against VIALCO, Lockheed, HOVENSA, and HOVIC.  The Virgin Islands Port Authority ("VIPA") and the Virgin Islands Waste Management Authority ("VIWMA") are third-party defendants sued by defendants VIALCO and Lockheed and former defendant Century for contribution under the federal Comprehensive Environmental Response, Compensation, and Liability Act and Virgin Islands law.

Commissioner has brought a claim under the federal Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. § 9607, to recover for alleged natural resources damage to the environs surrounding the refineries.[2] With respect to the alumina refinery, the Government alleges that a high-pH substance known as "red mud," an environmentally deleterious byproduct of alumina refining, has contaminated the environs surrounding the alumina refinery, including the Alucroix Channel. That body of water extends from the Caribbean Sea into the industrial tract, which is known as the South Coast Industrial Area.

In its answer to the first amended complaint, Lockheed denied it is liable for any environmental damage. It set forth 18 affirmative defenses, including "waiver," laches, and a statute of limitations defense. Lockheed also asserted that plaintiffs' claims "are barred or should be reduced by Plaintiffs' own contributory or comparative negligence."

In initial disclosures served on February 17, 2009, plaintiffs made known the existence of an April 1971 report by the Virgin Islands Department of Health entitled A Report on the

---

2. In Count VI, the Commissioner also maintains that a large release of red mud into the Alucroix channel in March 2002 caused natural resource damage to marine life and mangrove trees. See Dep't of Planning & Natural Res. v. Century Alumina Co., No. 05-62, 2010 U.S. Dist. LEXIS 70848, at *36-*45 (D.V.I. July 13, 2010). On July 13, 2010, the court awarded summary judgment to Century, Vialco, Lockheed, SCA, Alcoa, and SCRG on Count VI of the first amended complaint with respect to the Commissioner's other claims of natural resource damage under CERCLA on statute of limitations grounds. Id.

Environment Surrounding the Hess-Harvey Alumina Plants on St. Croix (the "Report").  The Report states:

> Until October of 1969, alkaline wastewater seeped through the "red mud" lagoon walls and discharged to inshore waters.  This discharge created a white crystaline deposit along the shoreline and is suspected to have contributed to the turbidity of the water.  When advised of this condition, Harvey Alumina[, one of Lockheed's predecessors,] installed a drainage channel to collect this seepage together [illegible] a pump to return it to the lagoons.  This correction has been effective to date.
> We wish to emphasize that no red mud is discharged to shore waters.  The discoloration observed in the vicinity of Harvey's cooling water channel is a result of the warm water stirring up the clay fines deposited by the original dredging operations.[3]

On July 9, 2012, Lockheed took the deposition of one of plaintiffs' experts, Dr. Jack Matson, who had cited to the Report in his expert witness report.  Lockheed's counsel asked Matson whether he knew the extent to which red mud could permeate the ground beneath the pools where the red mud was dried.[4]  Matson answered, "Well, I do recall in 1971 a document that was commissioned by the Virgin Islands which indicated that there were deposits on the shore caused by exfiltration from the old

---

3. The copy quality of the Report as submitted to the court is quite poor.  This quote reflects the court's best understanding of the text of the Report.

4. The process by which bauxite ore was refined into alumina on the property, including the steps involved in drying red mud, is explained in greater detail in the court's Memorandum dated February 13, 2012.  See Dep't of Planning & Natural Res. v. Century Aluminum Co., No. 05-62, 2012 U.S. Dist. LEXIS 17546, at *12-*16 (D.V.I. Feb. 13, 2012).

red mud pond." Lockheed's counsel then asked Matson if he recalled whether the Report specified if the red mud permeated the ground beneath the ponds or escaped through "the dikes that surrounded the ponds." Matson, who did not have the Report before him, eventually stated that "the message [he] got" from the Report was that the compounds escaped the old red mud pond because "the dikes weren't designed to prevent that from happening." Matson was clear that his statement was an interpretation based on his recollection of the Report. The following exchange occurred:

> Q: That's your interpretation? Was that written in the document?
>
> A: That's my interpretation of what it said.
>
> Q: Yeah. But you remember what it said?
>
> A: No. But I'd like to see the document, if you have it, and I can tell you.

Matson was not shown the document. Matson was asked whether the Report mentioned "any physical evidence that would suggest" the dikes failed to retain the red mud. Matson answered that the formation of calcium carbonate on the shoreline was caused by a reaction between the "caustic" in the red mud and seawater.[5]

The period set by the court for fact discovery expired on December 16, 2011, and the period for expert discovery terminated on July 31, 2012.

---

5. From the excerpts before us, it does not appear that plaintiffs' counsel asked Matson any questions with respect to this portion of his testimony.

Lockheed now seeks leave to amend its answer to add the defense of assumption of risk.  Rule 15(a) of the Federal Rules of Civil Procedure requires that the court should "freely give leave" to parties to amend their pleadings "when justice so requires."  In the absence of circumstances "such as undue delay, bad faith or dilatory motive on the part of the movant, ... undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.," the court should exercise its discretion to permit amendment.  Foman v. Davis, 371 U.S. 178, 182 (1962).

It is undisputed that Lockheed learned of the Report no later than February 2009.  Now, over three years later, Lockheed seeks leave to amend its answer based on statements in the Report.  Lockheed maintains that

> it was not until July 9, 2012, when the Plaintiffs' expert Dr. Matson confirmed that Plaintiffs interpret the 1971 Report and its description of the encrustations found in the northwest portion of the Alucroix Channel to mean that as early as 1971, high pH liquids were leaching out of the red mud ponds, into the Alucroix Channel, and precipitating into calcium carbonate formations.

(Def. Reply Br. at 5.)  It is true that the Report did not specify that the "white crystaline deposit" is calcium carbonate as Matson did in his deposition.  Nevertheless, as quoted above, the Report stated, "Until October of 1969, alkaline wastewater seeped through the "red mud" lagoon walls and discharged to inshore waters.  This discharge created a white crystaline deposit along the shoreline and is suspected to have contributed

to the turbidity of the water."  Other than naming the precipitate, Matson's testimony about the Report added nothing new to the information presented in the Report.  In fact, Matson's testimony concerning the contents of the Report was simply based on his best recollection of the statements in the Report.  He was not offering an authoritative interpretation of the Report on plaintiffs' behalf.  Matson's testimony does not justify Lockheed's waiting until 2012 to seek leave to amend its answer.

      Lockheed also asserts that its delay can be excused due to statements made during a deposition of the plaintiffs taken pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure.  Lockheed observes that the plaintiffs' representative failed to mention the Report and affirmatively stated that the plaintiffs first became aware in 2001 of chemical formations in the Alucroix Channel resulting from red mud erosion.  The representative did indeed state that the Government first observed "stalagmites" of deposited chemicals in the channel in 2001, but he also testified that "[I]t clearly appears to have been going on for a long time," referring to the red mud entering the channel and the resulting formations.  The plaintiffs' representative was not asked when the government believed the "stalagmites" began to form, he was not confronted with the Report, and he was not asked to reconcile his testimony with the statements in the Report.  The testimony of plaintiffs' Rule

-7-

30(b)(6) designee also does not justify Lockheed's belated request for leave to amend.

Moreover, assuming that assumption of the risk is still a valid defense to negligence in the Virgin Islands, an issue we do not reach,[6] prevailing on such a defense would require Lockheed to prove that the plaintiffs appreciated and, through non-negligent conduct, consented to the risk posed by the activities of Lockheed's predecessor.  See Smollett v. Skayting Dev. Corp., 793 F.2d 547, 548-49 (3d Cir. 1986); Keegan, 606 F.2d at 39-41 & n.8.  Neither the Report, Matson's testimony, nor the testimony of the plaintiffs' 30(b)(6) representative supports

---

6.  Plaintiffs ask the court to find that assumption of the risk is no longer a defense to negligence in the Virgin Islands now that § 3 of the Restatement (Third) of Torts: Apportionment of Liability has abandoned "[s]pecial ameliorative doctrines for defining plaintiff's negligence," including assumption of the risk.  See 1 V.I.C. § 4.  The comments and the reporter's note to § 3 explain that assumption of risk should be replaced by an apportionment of fault based on the reasonableness of the conduct of both the plaintiff and defendant.  Our Court of Appeals has explained that most jurisdictions that utilize a comparative fault approach to negligence have abandoned completely the assumption of risk defense.  Monk v. V.I. Water & Power Auth., 53 F.3d 1381, 1386 n.10 (3d Cir. 1995).  Nevertheless, the Court of Appeals has held that in the Virgin Islands a limited form of the defense survived the legislature's enactment in 1973 of a comparative fault statute.  Id. at 1387-88.  The limited form of assumption of risk defense sanctioned by the Court of Appeals is explained in detail in Keegan v. Anchor Inns, 606 F.2d 35, 39-41 & n.8 (3d Cir. 1979).  Given the conclusion we reach here, we have no occasion to consider whether or to what extent the Supreme Court of the Virgin Islands would hold that assumption of risk remains a valid defense in the Territory following the American Law Institute's publication of the Restatement (Third) of Torts: Apportionment of Liability.  See Banks v. Int'l Rental & Leasing Corp., 55 V.I. 967, 976-80 (V.I. 2011); see also 1 V.I.C. § 4.

such a finding. To the contrary, the Report states the remedial measures taken by Harvey Alumina, Lockheed's predecessor, prior to April 1971 were "effective to date." Taken together, the best that can be said of the evidence Lockheed has placed before the court is that in 1971 the Government became aware that red mud was causing white crystaline deposits on the shoreline of certain unspecified inshore waters. By the time of the Report, its authors concluded that Harvey Alumina had remedied the problem. Then, in 2001, the Government observed significant quantities of chemical precipitate. In 2012, Matson testified that the white crystaline substance observed in 1971 was calcium carbonate. This evidence is insufficient to show that the Government recognized in 1971 the hazard to the environment posed by the conduct of Lockheed's predecessors and consented to encounter that risk. The court is unwilling at this late stage of the proceedings to reopen discovery to allow Lockheed to obtain such evidence.

Accordingly, based on the evidence in the record, it would be futile to grant Lockheed leave to amend its answer to add the affirmative defense of assumption of risk. It would also be unduly prejudicial to plaintiffs and not in the interest of justice to reopen discovery on this issue at this late date in this rapidly aging action, when Lockheed knew about the 1971 Report in February 2009.

```
              IN THE DISTRICT COURT OF THE VIRGIN ISLANDS
                         DIVISION OF ST. CROIX


COMMISSIONER OF THE DEPARTMENT    :      CIVIL ACTION
OF PLANNING AND NATURAL           :
RESOURCES, ALICIA V. BARNES,      :
et al.                            :
                                  :
          v.                      :
                                  :
CENTURY ALUMINUM COMPANY,         :
et al.                            :      NO. 05-62
```

ORDER

AND NOW, this 26th day of September, 2012, for the reasons set forth in the accompanying Memorandum, it is hereby ORDERED that the motion of defendant Lockheed Martin Corporation for leave to amend its answer to the first amended complaint (Doc. No. 1208) is DENIED.

                                   BY THE COURT:


                                   /s/ Harvey Bartle III
                                   HARVEY BARTLE III              J.
                                   SITTING BY DESIGNATION