```
            IN THE DISTRICT COURT OF THE VIRGIN ISLANDS
                       DIVISION OF ST. CROIX

COMMISSIONER OF THE DEPARTMENT    :    CIVIL ACTION
OF PLANNING AND NATURAL           :
RESOURCES, ALICIA V. BARNES,      :
et al.                            :
                                  :
           v.                     :
                                  :
CENTURY ALUMINUM COMPANY,         :
et al.                            :    NO. 05-62
```

MEMORANDUM

Bartle, J.                                           April 23, 2013

      Plaintiffs, Commissioner of the United States Virgin Islands Department of Planning and Natural Resources, Alicia V. Barnes (the "Commissioner"), and the Government of the Virgin Islands (together with the Commissioner, the "Government"), filed this multi-count environmental lawsuit against entities who at various times owned portions of an industrial area in Kingshill, St. Croix on which both an alumina refinery and an oil refinery have operated. These defendants were Century Aluminum Company ("Century"), Virgin Islands Alumina Corporation ("VIALCO"), St. Croix Alumina, LLC ("SCA"), Lockheed Martin Corporation ("Lockheed"), Alcoa World Alumina, LLC, ("Alcoa"), St. Croix Renaissance Group, LLLP ("SCRG"), HOVENSA, LLC ("HOVENSA") and Hess Oil Virgin Islands Corporation ("HOVIC").[1] We have

---

1. The Virgin Islands Port Authority and the Virgin Islands Waste Management Authority are third-party defendants sued by
(continued...)

previously approved a settlement between the Government and SCA, Alcoa, and SCRG and granted summary judgment in favor of Century. Accordingly, the remaining defendants are VIALCO, Lockheed, HOVENSA, and HOVIC.

There are a number of pending motions under <u>Daubert v. Merrel Dow Pharmaceuticals</u>, 509 U.S. 579 (1993).  We will now consider the motion of the plaintiffs to limit the expert testimony of James W. Mercer ("Mercer").  HOVENSA and HOVIC (together, "Refinery Defendants") have filed an opposition to the motion.

I.

The court has a "gatekeeping" function in connection with expert testimony.  <u>See</u> <u>Gen. Elec. Co., et al. v. Joiner</u>, 522 U.S. 136, 142 (1997); <u>see also</u> <u>Daubert</u>, 509 U.S. at 589.  Rule 702 of the Federal Rules of Evidence provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

---

1.(...continued)
defendants VIALCO and Lockheed and former defendant Century for contribution.

As our Court of Appeals has repeatedly noted, Rule 702 embodies three requirements: qualification, reliability, and fit. Pineda v. Ford Motor Co., 520 F.3d 237, 244 (3d Cir. 2008). The plaintiffs do not challenge the qualifications of Mercer or the fit of his opinions.

To determine reliability, we focus not on the expert's conclusion but on whether that conclusion is "based on the methods and procedures of science rather than on subjective belief or unsupported speculation." Schneider, 320 F.3d at 404 (internal quotation marks omitted). Our analysis may include such factors as:

> (1) whether a method consists of a testable hypothesis; (2) whether the method has been subject to peer review; (3) the known or potential rate of error; (4) the existence and maintenance of standards controlling the technique's operation; (5) whether the method is generally accepted; (6) the relationship of the technique to methods which have been established to be reliable; (7) the qualifications of the expert witness testifying based on the methodology; and (8) the non-judicial uses to which the method has been put.

Pineda, 520 F.3d at 247-48.

"[T]he test of reliability is flexible" and this court possesses a broad latitude in determining reliability. Kumho Tire Co. v. Carmichael, 526 U.S. 137, 141-42 (1999). To be reliable under Daubert, a party need not prove that his or her expert's opinion is "correct." In re Paoli R.R. Yard PCB Litig., 35 F.3d 717, 744 (3d Cir. 1994). Instead:

> As long as an expert's scientific testimony rests upon good grounds, based on what is known, it should be tested by the adversary process-competing expert testimony and active cross-examination-rather than excluded from jurors' scrutiny for fear that they will not grasp its complexities or satisfactorily weigh its inadequacies.

United States v. Mitchell, 365 F.3d 215, 244 (3d Cir. 2004) (quoting Ruiz-Troche v. Pepsi Cola Bottling Co., 161 F.3d 77, 85 (1st Cir. 1998)).

## II.

Mercer was retained by the Refinery Defendants as a rebuttal expert witness to Charles B. Andrews ("Andrews"). Andrews was retained by the plaintiffs as a groundwater hydrologist to evaluate potential groundwater contamination from bauxite ore processing at the former alumina facility. The plaintiffs contend that Mercer includes opinions with no foundation or underlying data to support them.

The plaintiffs first dispute Mercer's opinion that, "[b]ecause of elevated chloride, Kingshill groundwater under the refinery that was near to the pre-refinery shoreline or was once submerged under the sea could not have been used directly for water supply even without the presence of petroleum hydrocarbons." The plaintiffs argue that this opinion should not be admitted because "Dr. Mercer cannot define with any specificity what 'near' means." This does not make his opinion unreliable. Mercer provided figures in his report to demarcate

the boundaries of the pre-refinery shoreline, and in his deposition he testified that whether groundwater near those boundaries could be used depended on the depth of the well and how close it was to the pre-refinery shoreline. The plaintiffs are, of course, free to question Mercer about his definition of "near" on cross-examination at trial, but they have not shown us that his opinion is unreliable under Daubert, and we will not exclude it.

The plaintiffs next dispute Mercer's opinion that "Dr. Andrews over-estimates future remediation pumping and the time period in the future that this pumpage will occur." They contend that Mercer should be precluded from giving this opinion "because he has done no analysis of his own to determine future pumping rates and concedes that he does not know what the decline in pumping will be." We are not persuaded. Mercer attempted to reproduce Andrews' results but disagreed as to his methodology. He may testify as to this process and his resulting conclusions, which "rest[] upon good grounds." Mitchell, 365 F.3d at 244. His testimony is admissible despite the admitted uncertainty of what the decline in remediation pumpage will be in the future since his methodology and conclusions are "based on what is known." Id.

The plaintiffs further contend that Mercer should be precluded from testifying as to how much phase-separated hydrocarbon ("PSH") remains underneath the refinery since he admitted that he based his original opinion on a misunderstanding

of Andrews' report. Indeed, Mercer stated in his report that "the amount of PSH remaining in the subsurface will be approximately 10% or less of what was released," which was significantly less than the 50% estimated by Andrews. However, at his deposition, Mercer testified that he misunderstood what Andrews was referring to and instead of the 10% figure previously opined, he now thought that the proper range of PSH remaining in the subsurface was 23%-50% of what was released. Because Mercer has apparently abandoned the 10% figure, he may not testify as to it at trial. However, he may testify to the opinions he discussed at his deposition.

The plaintiffs' final argument is that Mercer should be precluded from providing an opinion as to the volume of affected groundwater, although they do not dispute that he may comment on the methodology used by Andrews in his opinion on the volume of affected groundwater. In his deposition, Mercer stated that he did not intend to offer an opinion on the volume of affected groundwater because he had "not had time to do that sort of analysis." Any new opinion at this stage of the litigation would be too late. Accordingly, Mercer may not opine on the volume of affected groundwater, but he may testify as to his analysis of Andrews' opinions on the affected groundwater.