```
                IN THE DISTRICT COURT OF THE VIRGIN ISLANDS
                            DIVISION OF ST. CROIX
```

| | | |
|---|---|---|
| COMMISSIONER OF THE DEPARTMENT<br>OF PLANNING AND NATURAL<br>RESOURCES, ALICIA V. BARNES,<br>et al. | : <br> : <br> : <br> : <br> : | CIVIL ACTION |
| v. | : <br> : | |
| CENTURY ALUMINUM COMPANY,<br>et al. | : <br> : | NO. 05-62 |

<u>MEMORANDUM</u>

Bartle, J.                                                            May 9, 2013

        Plaintiffs, Commissioner of the United States Virgin Islands Department of Planning and Natural Resources, Alicia V. Barnes (the "Commissioner"), and the Government of the Virgin Islands (together with the Commissioner, the "Government"), filed this multi-count environmental lawsuit against the defendants who at various times owned portions of an industrial area in Kingshill, St. Croix on which both an alumina refinery and an oil refinery have operated.  Two of the oil refinery defendants are HOVENSA, LLC ("HOVENSA"), and Hess Oil Virgin Islands Corporation ("HOVIC").[1]

---

1. The original defendants included were Century Aluminum Company ("Century"), Virgin Islands Alumina Corporation ("VIALCO"), St. Croix Alumina, LLC ("SCA"), Lockheed Martin Corporation ("Lockheed"), Alcoa World Alumina, LLC, ("Alcoa"), St. Croix Renaissance Group, LLLP ("SCRG"), HOVENSA, and HOVIC. The Virgin Islands Port Authority and the Virgin Islands Waste Management Authority are third-party defendants sued by defendants VIALCO and Lockheed and former defendant Century for
                                                                    (continued...)

Before the court is the motion of these two defendants for an order "transferring venue to a court outside the Virgin Islands." The essence of defendants' motion is that the closure of the HOVENSA refinery on St. Croix, at the time the largest private employer on the Island, has generated such extreme adverse publicity and vitriol that a fair trial for defendants is not possible.

At the outset, we emphasize that this is a civil case. Motions to transfer civil actions are governed by 28 U.S.C. § 1404(a) which provides:

> For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented.

The District Court of the Virgin Islands has two divisions: the Division of St. Thomas and St. John and the Division of St. Croix. Defendants do not seek transfer to the former. Rather, they request a transfer to another district.

Defendants, however, do not point to any other district where this action might have been brought. Nor have they cited any cases specifically allowing for the transfer of a civil case to another district when the requirements of § 1404(a) have not been met. Instead, they argue that notwithstanding the

---

1.(...continued)
contribution. We have previously approved a settlement between the Government and SCA, Alcoa, and SCRG and granted summary judgment in favor of Century. The remaining defendants are VIALCO, Lockheed, HOVENSA, and HOVIC.

limitations of § 1404(a), they are entitled to a change of venue as a matter of due process.

The Supreme Court has declared that due process demands that a party be given a fair and impartial trial.  Many years ago, in Patterson v. State of Colorado, 205 U.S. 454, 462 (1907), Justice Oliver Wendell Holmes wrote, "[t]he theory of our system is that the conclusions to be reached in a case will be induced only by evidence and argument in open court, and not by any outside influence, whether of private talk or public print."

In similar fashion, the Supreme Court has stated in Marshall v. Jerrico, Inc.:

> The Due Process Clause entitles a person to an impartial and disinterested tribunal in both civil and criminal cases.  This requirement of neutrality in adjudicative proceedings safeguards the two central concerns of procedural due process, the prevention of unjustified or mistaken deprivations and the promotion of participation and dialogue by affected individuals in the decisionmaking process....  The neutrality requirement helps to guarantee that life, liberty, or property will not be taken on the basis of an erroneous or distorted conception of the facts or the law....  At the same time, it preserves both the appearance and reality of fairness, "generating the feeling, so important to a popular government, that justice has been done," ... by ensuring that no person will be deprived of his interests in the absence of a proceeding in which he may present his case with assurance that the arbiter is not predisposed to find against him.

446 U.S. 238, 242 (1980) (citations omitted) (emphasis added).

There are numerous criminal cases which focus on the issues of a fair and impartial trial and motions to change venue

to a place outside the original district as a result of prejudicial pretrial publicity.[2] While defendants have cited no decision where a civil case was transferred because of adverse publicity to a district where it could not have been brought originally, it seems clear under Patterson and Marshall that the constitutional imperative for a fair and impartial trial is equally applicable to civil actions as well as criminal actions.

The Supreme Court has revisited the issue of a fair and impartial criminal trial most recently in Skilling v. United States, 130 S. Ct. 2896 (2010). The analysis seems relevant here. Skilling was the Chief Executive Officer at Enron in Houston, Texas at the time of its impending financial collapse and just before its descent into bankruptcy. At one point, it was one of the world's leading energy companies. Skilling was

---

2. Venue in a criminal action is governed by the Sixth Amendment which provides in relevant part: "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed; which district shall have been previously ascertained by law, ...."

In contrast to § 1404(a), there is a procedural change-of-venue rule for federal criminal actions. It does not limit the district to which they may be transferred. Rule 21(a) of the Federal Rules of Criminal Procedure provides:

> **For Prejudice**. Upon the defendant's motion, the court must transfer the proceeding against that defendant to another district if the court is satisfied that so great a prejudice against the defendant exists in the transferring district that the defendant cannot obtain a fair and impartial trial there.

indicted and convicted of conspiracy to commit securities and wire fraud and related substantive charges.  The adverse media publicity in the Houston area concerning Enron, Skilling and other high level individuals associated with Enron was extensive, continual, and in some instances extreme.  One high level executive, co-defendant Richard Causey, pleaded guilty not long before Skilling's trial was scheduled and again that event generated much media attention.

Skilling moved for change of venue which the District Court denied, although it did grant a short delay after Causey's plea.  During voir dire for Skilling, the District Court conducted individual examination of potential jurors and excused many for cause, including those who appeared not to have open minds.

The Supreme Court rejected Skilling's argument that he was denied a fair and impartial trial because of adverse pretrial publicity.  The court noted that the District Court's use of questionnaires completed by prospective jurors as well as individual examination of prospective jurors in the courtroom met the standards for due process.  The Court also explained that in the Houston area, there were 4.5 million persons eligible for jury duty and that with such a large number it is hard to argue that any impartial jury panel could not be obtained.  In addition, nearly four years had elapsed between the collapse of Enron and Skilling's trial, allowing an extended period for passions to cool.  According to the Court, the level of averse

publicity had diminished in the interim.  Moreover, there was "no smoking gun" evidence against Skilling that was publicized before the trial.  See Rideau v. Louisiana, 373 U.S. 723, 726 (1963).

In confronting the pending issue, this court must keep in mind that a presumption of prejudice arises only in the "extreme case."  As it stated in Skilling:

> Prominence does not necessarily produce prejudice, and juror impartiality, we have reiterated, does not require ignorance.... (Jurors are not required to be "totally ignorant of the facts and issues involved"; "scarcely any of those best qualified to serve as jurors will not have formed some impression or opinion as to the merits of the case."); ... ("[E]very case of public interest is almost, as a matter of necessity, brought to the attention of all the intelligent people in the vicinity, and scarcely any one can be found among those best fitted for jurors who has not read or heard of it, and who has not some impression or some opinion in respect to its merits."). A presumption of prejudice, our decisions indicate, attends only the extreme case.

130 S. Ct. at 2914-15 (citations omitted).

Here, there are certain similarities to as well as certain differences from Skilling.  The announcement of the closure of the HOVENSA refinery occurred on January 18, 2012.  It meant the loss of some 2,000 jobs.  The trial date has yet to be scheduled.  Fact discovery has closed and the court is in the process of deciding numerous Daubert motions, a time consuming process indeed.  In any event, a significant period of time will have elapsed between the closure of the refinery and the advent of the trial.  The media publicity adverse to HOVENSA, as noted

above, has been extensive.  It has included some highly unfavorable statements by the Governor of the Virgin Islands and various other political figures.  HOVENSA was at the time the largest private employer on St. Croix.  More recently, however, there has been discussion in the press that the plant may be sold to another company, an event which would create jobs.  Finally, we acknowledge that jurors will be selected from a jury pool which is a small fraction of the pool which was available in Houston for the <u>Skilling</u> trial.  Here on St. Croix the population is only 50,000.

      Recently, Judge Anne E. Thompson, sitting by designation, had before her a motion by HOVENSA under § 1404(a) for change of venue from the Division of St. Croix to the Division of St. Thomas and St. John in an employment discrimination action.  <u>Paul v. HOVENSA LLC</u>, No. 07-51, 2013 U.S. Dist. LEXIS 34272 (D.V.I. Mar. 6, 2013).  The motion was first decided by Magistrate Judge George W. Cannon, Jr. who denied the motion.  Judge Thompson approved his decision.  She accepted the Magistrate Judge's findings that:

> (1) the statistical report submitted by Defendant failed to demonstrate an ingrained bias on the part of St. Croix residents such as would make a fair trial impossible; (2) the St. Croix community has sufficiently recovered from the initial shock of Defendant's closure, and negative attitudes toward Defendant have correspondingly subsided; and (3) Defendant has neglected to seek a venue transfer in previous cases,

        despite a long history of lawsuits in St. Croix.[3]

Like Judge Thompson, we agree that Judge Cannon is in an "advantageous position[] within St. Croix for gauging matters of popular sentiment." Id. at *10.  She also noted that the subject of change of venue could be revisited at the time of trial, when voir dire occurs.

      We need not decide today the constitutional issue raised by HOVENSA and HOVIC.  It is premature under the circumstances to determine so far in advance of trial whether defendants can receive a fair and impartial trial on St. Croix as the Constitution demands.  It is best for the court to make any determination at the time of jury selection.  Procedures, such as questionnaires and individual voir dire, exist to help resolve the matter.  Postponement of the trial for a reasonable period, rather than transfer, as well as cautionary jury instructions may also be viable options.  The court recognizes that deferring the issue until the start of the trial may turn out to be disruptive if the court should determine at that time that a fair and impartial trial on St. Croix cannot be had.  Balancing all the factors involved, the court does not view this concern as controlling.

---

3. Defendants here moved for a change of venue to the St. Thomas and St. John Division on June 3, 2011 (Doc. #735) but withdrew the motion on February 15, 2012 (Doc. #1072).

Accordingly, the motion of defendants HOVENSA and HOVIC to transfer venue to a court outside the Virgin Islands will be denied without prejudice.