IN THE DISTRICT COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. CROIX

| | | |
|---|---|---|
| COMMISSIONER OF THE DEPARTMENT | : | CIVIL ACTION |
| OF PLANNING AND NATURAL | : | |
| RESOURCES, ALICIA V. BARNES, | : | |
| et al. | : | |
| | : | |
| v. | : | |
| | : | |
| CENTURY ALUMINUM COMPANY, | : | |
| et al. | : | NO. 05-62 |

MEMORANDUM

Bartle, J.                                                    July 9, 2013

        Plaintiffs, Commissioner of the United States Virgin
Islands Department of Planning and Natural Resources, Alicia V.
Barnes (the "Commissioner"), and the Government of the Virgin
Islands (together with the Commissioner, the "Government"), filed
this multi-count environmental lawsuit against entities who at
various times owned portions of an industrial area in Kingshill,
St. Croix on which both an alumina refinery and an oil refinery
have operated.  These defendants were Century Aluminum Company
("Century"), Virgin Islands Alumina Corporation ("VIALCO"), St.
Croix Alumina, LLC ("SCA"), Lockheed Martin Corporation
("Lockheed"), Alcoa World Alumina, LLC, ("Alcoa"), St. Croix
Renaissance Group, LLLP ("SCRG"), HOVENSA, LLC ("HOVENSA") and
Hess Oil Virgin Islands Corporation ("HOVIC").[1]  We have

_____

1.  The Virgin Islands Port Authority and the Virgin Islands
Waste Management Authority are third-party defendants sued by
                                                    (continued...)

previously approved a settlement between the Government and SCA, Alcoa, and SCRG and granted summary judgment in favor of Century. Accordingly, the remaining defendants are VIALCO, Lockheed, HOVENSA, and HOVIC.

There are a number of pending motions under Daubert v. Merrel Dow Pharmaceuticals, 509 U.S. 579 (1993).  We will now consider the motion of Lockheed to exclude the expert testimony of Brian Daley Ph.D. ("Dr. Daley"), as well as those opinions of Stratus Consulting based upon Dr. Daley's testimony.  Also before the court is Lockheed's motion to strike the declaration of Dr. Daley filed on December 14, 2012 and incorporated memorandum of law.

I.

The court has a "gatekeeping" function in connection with expert testimony.  See Gen. Elec. Co., et al. v. Joiner, 522 U.S. 136, 142 (1997); see also Daubert, 509 U.S. at 589.  Rule 702 of the Federal Rules of Evidence provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the

---

1.(...continued)
defendants VIALCO and Lockheed and former defendant Century for contribution.

principles and methods reliably to the facts
of the case.

As our Court of Appeals has repeatedly noted, Rule 702 embodies
three requirements:  qualification, reliability, and fit.  Pineda
v. Ford Motor Co., 520 F.3d 237, 244 (3d Cir. 2008).  Lockheed
does not contend that Dr. Daley is unqualified.

To determine reliability, we focus not on the expert's
conclusion but on whether that conclusion is "based on the
methods and procedures of science rather than on subjective
belief or unsupported speculation."  Schneider ex rel. Estate of
Schneider v. Fried, 320 F.3d 396, 404 (3d Cir. 2003) (internal
quotation marks omitted).  Our analysis may include such factors
as:

> (1) whether a method consists of a testable
> hypothesis; (2) whether the method has been
> subject to peer review; (3) the known or
> potential rate of error; (4) the existence
> and maintenance of standards controlling the
> technique's operation; (5) whether the method
> is generally accepted; (6) the relationship
> of the technique to methods which have been
> established to be reliable; (7) the
> qualifications of the expert witness
> testifying based on the methodology; and (8)
> the non-judicial uses to which the method has
> been put.

Pineda, 520 F.3d at 247-48.

"[T]he test of reliability is flexible" and this court
possesses a broad latitude in determining reliability.  Kumho
Tire Co. v. Carmichael, 526 U.S. 137, 141-42 (1999).  To be
reliable under Daubert, a party need not prove that his or her

-3-

expert's opinion is "correct."  <u>In re Paoli R.R. Yard PCB Litig.</u>,
35 F.3d 717, 744 (3d Cir. 1994).  Instead:

> As long as an expert's scientific
> testimony rests upon good grounds, based
> on what is known, it should be tested
> by the adversary process-competing
> expert testimony and active
> cross-examination-rather than
> excluded from jurors' scrutiny for
> fear that they will not grasp its
> complexities or satisfactorily
> weigh its inadequacies.

<u>United States v. Mitchell</u>, 365 F.3d 215, 244 (3d Cir. 2004)

(quoting <u>Ruiz-Troche v. Pepsi Cola Bottling Co.</u>, 161 F.3d 77, 85

(1st Cir. 1998)).

    As for "fit," expert testimony must also "assist the
trier of fact to understand the evidence or to determine a fact
in issue."  Fed. R. Evid. 702.  Thus, to "fit," such evidence
must bear some relation to the "particular disputed factual
issues in the case."  <u>United States v. Downing</u>, 753 F.2d 1224,
1237 (3d Cir. 1985).  Accordingly, this factor has been described
as one of relevance.  <u>Daubert</u>, 509 U.S. at 591; <u>Paoli</u>, 35 F.3d at
745 & n.13.

II.

    Dr. Daley was retained by the plaintiffs in order to
testify about the types and density of vegetation that would have
existed at the former alumina facility if the property had not
been used for the manufacture of alumina and the storage of
byproducts of alumina refining operations.  Dr. Daley holds an
M.S. in Natural Resources Management from the University of

-4-

Montana, Missoula and a Ph.D. from the School of Forestry and
Resource Conservation from the University of Florida.  Dr. Daley
is currently a senior scientist and partner at Geographic
Consulting LLC and conducts natural resource management and
forest restoration projects throughout the Caribbean.

Dr. Daley summarized the opinions in his report as
follows:

> 1. The habitat that would have occurred on
> the site prior to contamination by bauxite
> processing would be Dry Forest, with a small
> amount of mixed grassland/shrubland.
> 2. Off-site forest restoration is a way to
> recover some of the environmental services
> lost in situ.
> 3. There is young, impacted,
> post-agricultural secondary dry forest in the
> Kingshill aquifer that would benefit from
> forest enrichment activity, and such activity
> has potential to greatly improve the
> environmental services that land provides.
> 4. The cost estimate for forest enrichment
> "gap planting" with native tree species is
> $37,280 per acre.

III.

We will first address the motion of Lockheed to exclude
Dr. Daley's opinion testimony.  Lockheed contends that Dr.
Daley's opinion that the alumina site would have been a dry
forest habitat prior to contamination is irrelevant and does not
"fit" under Daubert because he failed to consider the physical
modifications to the area that occurred as a result of the
development of the site and other factors that affected the
property before any hazardous substances were released.

We are not persuaded.  Lockheed fails to acknowledge that Dr. Daley contributed to two expert reports, the one in which he opines, as noted above, that "[t]he habitat that would have occurred on the site prior to contamination by bauxite processing would be Dry Forest..." and a second report, written with John M. Gardner, P.E. ("Gardner").  This second report includes one section on "Pre-Development Site Conditions" and another section on "Post-Development Site Conditions."  In the "Pre-Development Site Conditions" section, the report explains:

> [P]rior to site development in the 1960's, the location of the subject site areas ... was occupied by Krause Lagoon....
> For purposes of restoration, it is my opinion that it is not practical, and may not even be feasible to rehabilitate these areas back to their original marsh/wetlands conditions due to the significant disturbance and earthmoving of Red Mud and other industrial wastes that would be required and the resulting environmental impacts to surrounding areas....
> Consequently, the restoration condition that will be addressed by the conceptual design presented in this report will be Post-Development, Baseline.

Accordingly, Lockheed is incorrect when it states that Dr. Daley did not consider the modifications to the habitat that occurred as a result of the development of the site.  He and Gardner considered this in the separate report.  The dry forest conditions described by Dr. Daley are thus not "based on a presumption of a pristine, undisturbed, 'pre-European' habitat," as Lockheed argues.  Rather, the dry forest is what Dr. Daley and Gardner have determined to be the best option for an economical

restoration.  The plaintiffs do not wish to dredge the Kraus
Lagoon to return to pre-developmental conditions.  They instead
argue that a dry forest is what will grow on the site no matter
what type of restoration plan is instituted, and accordingly
helping that process along is the most economical way to restore
the property.  Dr. Daley's opinions are therefore relevant to
this argument and "fit" under <u>Daubert</u>.  Lockheed's other
arguments are without merit.  Accordingly, we will deny
Lockheed's motion.

                              IV.

     Lockheed has also moved to strike a late-filed
declaration of Dr. Daley under Rule 37(c)(1) of the Federal Rules
of Civil Procedure, which provides:

          If a party fails to provide information or
          identify a witness as required by Rule 26(a)
          or (e), the party is not allowed to use that
          information or witness to supply evidence on
          a motion, at a hearing, or at a trial, unless
          the failure was substantially justified or is
          harmless.

Fed. R. Civ. P. 37(c)(1).  Dr. Daley was named in the plaintiffs'
original Rule 26 disclosures as a person with discoverable
information and provided an expert report during discovery.  He
then provided the declaration in issue as an exhibit to the
plaintiffs' brief in response to the defendants' motions under
<u>Daubert</u> to exclude his testimony.  The declaration states his
qualifications, which are also stated in his reports.  It also
states that Lockheed's characterization of his opinions as based
on a presumption of a "pristine, undisturbed 'pre-European'

                             -7-

habitat" is untrue and instead outlines on what his opinions were in fact based.  The declaration also states that he considered the development of the site, despite Lockheed's argument to the contrary.

Rule 26(e) of the Federal Rules of Civil Procedure provides:

> (1) <u>In General</u>.  A  party who has made a disclosure under Rule 26(a) ... must supplement or correct its disclosure or response:
>
> > (A) in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing; or
> >
> > (B) as ordered by the court.
>
> (2) <u>Expert Witness</u>.  For an expert whose report must be disclosed under Rule 26(a)(2)(B), the party's duty to supplement extends both to information included in the report and to information given during the expert's deposition.  Any additions or changes to this information must be disclosed by the time the party's pretrial disclosures under Rule 26(a)(3) are due.

The court must consider four factors before striking testimony due to a party's failure to comply with the discovery rules.  We examine the "prejudice or surprise" to the party against which the evidence would be admitted, the ability to cure that prejudice, "the extent to which allowing the evidence would disrupt the orderly and efficient trial of the case or other cases in the court," and "bad faith or wilfulness" on the part of

the disclosing party in "failing to comply with a court order or discovery obligation." Nicholas v. Pa. State Univ., 227 F.3d 133, 148 (3d Cir. 2000). In applying these factors, we may consider the importance to the disclosing party of the proposed witnesses' testimony. Konstantopoulos v. Westvaco Corp., 112 F.3d 710, 719 (3d Cir. 1997).

Based on the above factors, we will not strike Dr. Daley's declaration. There is no surprise or prejudice to any of the defendants if Dr. Daley's declaration is not stricken. Dr. Daley provided an expert report and was deposed on his opinions. The declaration is a clarification of those opinions in response to the defendants' Daubert motions. Dr. Daley does not change any of his opinions in the declaration or provide any new opinions. Lockheed had notice of Dr. Daley's methodology, the facts of the case, and his opinions. This is sufficient under the circumstances to avoid surprise or prejudice.

The declaration also will not "disrupt the orderly and efficient trial of the case or other cases in the court." It is merely in response to one of the many motions filed under Daubert that the court is still addressing. It changes nothing in terms of the schedule for trial. Lockheed has not provided any evidence to show that the plaintiffs filed Dr. Daley's declaration in bad faith. Dr. Daley's testimony is important for the plaintiffs at trial. Accordingly, we will not strike it.

-9-