```
            IN THE DISTRICT COURT OF THE VIRGIN ISLANDS
                        DIVISION OF ST. CROIX

COMMISSIONER OF THE DEPARTMENT    :    CIVIL ACTION
OF PLANNING AND NATURAL           :
RESOURCES, ALICIA V. BARNES,      :
et al.                            :
                                  :
          v.                      :
                                  :
CENTURY ALUMINUM COMPANY,         :
et al.                            :    NO. 05-62
```

MEMORANDUM

Bartle, J.                                              August 14, 2013

Plaintiffs, Commissioner of the United States Virgin Islands Department of Planning and Natural Resources, Alicia V. Barnes (the "Commissioner"), and the Government of the Virgin Islands (together with the Commissioner, the "Government"), filed this multi-count environmental lawsuit against entities who at various times owned portions of an industrial area in Kingshill, St. Croix on which both an alumina refining facility and an oil refinery have operated.  These defendants were Century Aluminum Company ("Century"), Virgin Islands Alumina Corporation ("VIALCO"), St. Croix Alumina, LLC ("SCA"), Lockheed Martin Corporation ("Lockheed"), Alcoa World Alumina, LLC, ("Alcoa"), St. Croix Renaissance Group, LLLP ("SCRG"), HOVENSA, LLC ("HOVENSA") and Hess Oil Virgin Islands Corporation ("HOVIC").[1]

---

1.  The Virgin Islands Port Authority and the Virgin Islands Waste Management Authority are third-party defendants sued by
(continued...)

We have previously approved a settlement between the Government and SCA, Alcoa, and SCRG and granted summary judgment in favor of Century.  Accordingly, the remaining defendants are VIALCO, Lockheed, HOVENSA, and HOVIC.

There are a number of pending motions under Daubert v. Merrel Dow Pharmaceuticals, 509 U.S. 579 (1993).  We will now consider the motion of the plaintiffs to exclude the expert report, opinions, and trial testimony of Richard W. Hurst, Ph.D. ("Dr. Hurst").

I.

The court has a "gatekeeping" function in connection with expert testimony.  See Gen. Elec. Co., et al. v. Joiner, 522 U.S. 136, 142 (1997); see also Daubert, 509 U.S. at 589.  Rule 702 of the Federal Rules of Evidence provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

As our Court of Appeals has repeatedly noted, Rule 702 embodies three requirements:  qualification, reliability, and fit.  Pineda

---

1. (...continued)
defendants VIALCO and Lockheed and former defendant Century for contribution.

v. Ford Motor Co., 520 F.3d 237, 244 (3d Cir. 2008).  The plaintiffs do not contend that Dr. Hurst is unqualified or that his opinions do not fit this case.

To determine reliability, we focus not on the expert's conclusion but on whether that conclusion is "based on the methods and procedures of science rather than on subjective belief or unsupported speculation."  Schneider ex rel. Estate of Schneider v. Fried, 320 F.3d 396, 404 (3d Cir. 2003) (internal quotation marks omitted).  Our analysis may include such factors as:

> (1) whether a method consists of a testable hypothesis; (2) whether the method has been subject to peer review; (3) the known or potential rate of error; (4) the existence and maintenance of standards controlling the technique's operation; (5) whether the method is generally accepted; (6) the relationship of the technique to methods which have been established to be reliable; (7) the qualifications of the expert witness testifying based on the methodology; and (8) the non-judicial uses to which the method has been put.

Pineda, 520 F.3d at 247-48.

"[T]he test of reliability is flexible" and this court possesses a broad latitude in determining reliability.  Kumho Tire Co. v. Carmichael, 526 U.S. 137, 141-42 (1999).  To be reliable under Daubert, a party need not prove that his or her expert's opinion is "correct."  In re Paoli R.R. Yard PCB Litig., 35 F.3d 717, 744 (3d Cir. 1994).  Instead:

> As long as an expert's scientific testimony rests upon good grounds, based on what is known, it should be tested by the adversary

-3-

> process-competing expert testimony and active cross-examination-rather than excluded from jurors' scrutiny for fear that they will not grasp its complexities or satisfactorily weigh its inadequacies.

United States v. Mitchell, 365 F.3d 215, 244 (3d Cir. 2004) (quoting Ruiz-Troche v. Pepsi Cola Bottling Co., 161 F.3d 77, 85 (1st Cir. 1998)).

II.

Dr. Hurst was retained by HOVENSA and HOVIC (together, the "Refinery Defendants") to examine and evaluate the opinion of Dr. Charles B. Andrews ("Dr. Andrews"), one of the plaintiffs' experts.  Dr. Hurst plans to opine at trial that Dr. Andrews' opinion that hydrocarbons from the oil refinery site migrated to the alumina facility site is incorrect.  The plaintiffs make one argument in their motion, which is that Dr. Hurst "rel[ies] entirely on the undisclosed 'opinion,' 'conclusions' and 'work' of Gene Schmidt, who is not an expert or witness in this case; Dr. Hurst failed to perform an independent investigation and verification of Mr. Schmidt's opinions and therefore Dr. Hurst's methodology was not reliable."

Gene Schmidt ("Schmidt") was a petroleum fingerprinting consultant for HOVIC who analyzed petroleum samples on the oil refinery property on the boundary of the alumina facility.  Dr. Hurst used Schmidt's data in forming his opinions about whether the hydrocarbons from the oil refinery site migrated to the alumina facility site.  The Refinery Defendants do not plan to call Schmidt as a witness.  Dr. Hurst has explained that he did

not rely on Schmidt's opinions, but rather he simply used the data Schmidt had collected and performed an independent statistical analysis.

An expert is permitted to rely upon facts or data that are of a type reasonably relied upon by experts in the field. See Fed. R. Evid. 702 & 703. Dr. Hurst is not citing Schmidt's opinions as his own, as the plaintiffs contend. Rather, he is merely using Schmidt's data. Dr. Hurst is qualified to test and evaluate Schmidt's data. The plaintiffs are, of course, welcome to cross-examine Dr. Hurst on his reliance on Schmidt's data at trial.

In their reply brief, the plaintiffs contend that Dr. Hurst did not include his methodology in his report, and he should not be permitted to provide his methodology in an affidavit attached to the Refinery Defendant's brief. Although Dr. Hurst does go into more detail about his methodology in this affidavit, he did not leave it out entirely from his report. The affidavit provides no new opinions but merely clarifies the ones he details in his report. As the plaintiffs are aware, since they have provided similar affidavits in this litigation, this is permissible. See Nicholas v. Pa. State Univ., 227 F.3d 133, 148 (3d Cir. 2000).

Accordingly, we will deny the motion of the plaintiffs to exclude Dr. Hurst's expert opinions.