```
            IN THE DISTRICT COURT OF THE VIRGIN ISLANDS
                       DIVISION OF ST. CROIX

COMMISSIONER OF THE DEPARTMENT    :    CIVIL ACTION
OF PLANNING AND NATURAL           :
RESOURCES, ALICIA V. BARNES,      :
et al.                            :
                                  :
         v.                       :
                                  :
CENTURY ALUMINUM COMPANY,         :
et al.                            :    NO. 05-62
```

MEMORANDUM

Bartle, J.                                              August 14, 2013

       Plaintiffs, Commissioner of the United States Virgin Islands Department of Planning and Natural Resources, Alicia V. Barnes (the "Commissioner"), and the Government of the Virgin Islands (together with the Commissioner, the "Government"), filed this multi-count environmental lawsuit against entities who at various times owned portions of an industrial area in Kingshill, St. Croix on which both an alumina refining facility and an oil refinery have operated.  These defendants were Century Aluminum Company ("Century"), Virgin Islands Alumina Corporation ("VIALCO"), St. Croix Alumina, LLC ("SCA"), Lockheed Martin Corporation ("Lockheed"), Alcoa World Alumina, LLC, ("Alcoa"), St. Croix Renaissance Group, LLLP ("SCRG"), HOVENSA, LLC ("HOVENSA") and Hess Oil Virgin Islands Corporation ("HOVIC").[1]

---

1.  The Virgin Islands Port Authority and the Virgin Islands Waste Management Authority are third-party defendants sued by
                                      (continued...)

We have previously approved a settlement between the Government and SCA, Alcoa, and SCRG and granted summary judgment in favor of Century.  Accordingly, the remaining defendants are VIALCO, Lockheed, HOVENSA, and HOVIC.

There are a number of pending motions under Daubert v. Merrel Dow Pharmaceuticals, 509 U.S. 579 (1993).  We will now consider the motion of the plaintiffs to exclude the expert report, opinions, and testimony of David P. Wills, P.E. ("Wills").

I.

The court has a "gatekeeping" function in connection with expert testimony.  See Gen. Elec. Co., et al. v. Joiner, 522 U.S. 136, 142 (1997); see also Daubert, 509 U.S. at 589.  Rule 702 of the Federal Rules of Evidence provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

As our Court of Appeals has repeatedly noted, Rule 702 embodies three requirements:  qualification, reliability, and fit.  Pineda

---

1.(...continued)
defendants VIALCO and Lockheed and former defendant Century for contribution.

v. Ford Motor Co., 520 F.3d 237, 244 (3d Cir. 2008).  The plaintiffs do not argue that Wills' opinions are unreliable or that they do not fit the facts of this case.

An expert is qualified if she "possess[es] specialized expertise."  Schneider ex rel. Estate of Schneider v. Fried, 320 F.3d 396, 404 (3d Cir. 2003).  This does not necessarily require formal credentials, as "a broad range of knowledge, skills, and training qualify an expert," and may include informal qualifications such as real-world experience.  In re Paoli R.R. Yard PCB Litig., 35 F.3d 717, 741 (3d Cir. 1994).  The qualification standard is a liberal one, and an expert may be sufficiently qualified under Rule 702 even if "the trial court does not deem the proposed expert to be the best qualified or because the proposed expert does not have the specialization that the court considers most appropriate."  Holbrook v. Lykes Bros. S.S. Co., 80 F.3d 777, 782 (3d Cir. 1996).

II.

Wills was retained by Lockheed to provide expert opinions and testimony regarding the degree of care exercised by Lockheed Martin's predecessors in the operation of the former alumina refining facility.  The plaintiffs make one argument in their motion, that Wills is unqualified under Daubert because he only has education, experience, and training in the aluminum industry, but the issues he wishes to testify about involve the alumina industry.  The facility at issue was an alumina refining facility, which through the use of the "Bayer Process," processed

bauxite ore into alumina, which is the oxide form of aluminum and a white powder. In contrast, an aluminum processing facility processes alumina into aluminum metal.

Wills is a Managing Engineer in the Materials and Corrosion Engineering practice at Exponent, a scientific and engineering consulting firm. He received a B.S. in Metallurgical Engineering from the University of Missouri at Rolla in 1977 and an M.B.A. from Nova University in 1985. He has ten years of experience in the aluminum industry, during eight of which he was responsible for ensuring environmental compliance. From 1978 to 1980, he was an Ingot Process Engineer at Sebree Reduction Facility. This facility in Henderson, Kentucky "processed approximately 2 million pounds per day of alumina and output approximately 1 million pounds per day of aluminum metal." His role was to be "in charge of quality control, alloy specifications, casting practices and new materials evaluation for the casting facility there."

From 1980 to 1982, he was a Development Engineer at Anaconda Aluminum Extruded Products in Miami, Florida. He was responsible for ensuring that the facility complied with relevant environmental rules and regulations regarding the neutralization and disposal of sodium hydroxide solution. He explained that after the sodium hydroxide solution was neutralized, it could ultimately go into a local landfill. This process was regulated by the Dade County Environmental Resource Management. In 1982, Anaconda Aluminum Extruded Products was sold to ARCO R&D and his

duties continued, although his title was changed to Senior Research Metallurgist-Extrusions. From 1985 to 1988 he was the Plant Manager at Continuous Extruded Products, Inc., in Miami, Florida, which was owned by Kaiser Aluminum. In this position, he was also responsible for environmental compliance related to the neutralization and disposal of the sodium hydroxide solution.

Since 1988, Wills has worked at Exponent and consulted various projects including some in the aluminum industry. He has never worked in an alumina refining facility or consulted on a project in the alumina industry. However, Wills studied the Bayer Process during his undergraduate education and also in preparation for a course he taught for the American Society of Materials entitled "Aluminum For the Non-Metallurgist."

Wills testified at his deposition about the current state of the alumina industry in the United States today. He stated:
> Well, at this point in time there are very
> few alumina facilities in the United States.
> The one that we're discussing here in St.
> Croix has closed, and many other facilities
> of that time have closed in the United
> States. I think there's one still working in
> Gramercy, Louisiana. And there may be a few
> others but there are not many.

The fact that there are very few alumina refining facilities in the United States has not been disputed by the plaintiffs. Lockheed contends that it would be onerous to require them to have an expert who worked in such a small field. We agree. Wills is sufficiently qualified by his experience in

environmental compliance in the aluminum industry -- a related industry -- along with his education in metallurgy.  Wills is additionally qualified because of his educational experience in the Bayer Process, the method which was used at the alumina refining facility to process bauxite ore into alumina.  Furthermore, Wills has studied various documents on the practices and standards of care in the alumina industry in preparation for this litigation.

As noted above, the qualification standard is liberal, and an expert may be sufficiently qualified even if "the trial court does not deem the proposed expert to be the best qualified or because the proposed expert does not have the specialization that the court considers most appropriate."  Holbrook, 80 F.3d at 782.  Indeed, in Holbrook, our Court of Appeals accepted more general qualifications of an expert in holding that a treating physician did not have to practice a particular specialty in order to testify concerning certain matters.  Id.  The plaintiffs are, of course, welcome to question Wills on his experience in the alumina industry on cross-examination.

Accordingly, we will deny the motion of the plaintiffs to exclude Wills' expert opinions.