```
              IN THE DISTRICT COURT OF THE VIRGIN ISLANDS
                         DIVISION OF ST. CROIX
```

| | | |
|---|---|---|
| COMMISSIONER OF THE DEPARTMENT<br>OF PLANNING AND NATURAL<br>RESOURCES, ALICIA V. BARNES,<br>et al. | : <br>: <br>: <br>: <br>: | CIVIL ACTION |
| v. | : <br>: | |
| CENTURY ALUMINUM COMPANY,<br>et al. | : <br>: | NO. 05-62 |

<u>MEMORANDUM</u>

Bartle, J.                                                August 20, 2013

    Plaintiffs, Commissioner of the United States Virgin Islands Department of Planning and Natural Resources, Alicia V. Barnes (the "Commissioner"), and the Government of the Virgin Islands (together with the Commissioner, the "Government"), filed this multi-count environmental lawsuit against entities who at various times owned portions of an industrial area in Kingshill, St. Croix on which both an alumina refining facility and an oil refinery have operated.  These defendants were Century Aluminum Company ("Century"), Virgin Islands Alumina Corporation ("VIALCO"), St. Croix Alumina, LLC ("SCA"), Lockheed Martin Corporation ("Lockheed"), Alcoa World Alumina, LLC, ("Alcoa"), St. Croix Renaissance Group, LLLP ("SCRG"), HOVENSA, LLC ("HOVENSA") and Hess Oil Virgin Islands Corporation ("HOVIC").[1]

---

1.  The Virgin Islands Port Authority and the Virgin Islands
(continued...)

We have previously approved a settlement between the Government and SCA, Alcoa, and SCRG and granted summary judgment in favor of Century. Accordingly, the remaining defendants are VIALCO, Lockheed, HOVENSA, and HOVIC.

We will now consider the motion of the plaintiffs to exclude and limit the applicability of certain portions of the expert report and testimony of Thomas C. Ginn, Ph.D. ("Dr. Ginn") under Daubert v. Merrel Dow Pharmaceuticals, 509 U.S. 579 (1993).

I.

The court has a "gatekeeping" function in connection with expert testimony. See Gen. Elec. Co., et al. v. Joiner, 522 U.S. 136, 142 (1997); see also Daubert, 509 U.S. at 589. Rule 702 of the Federal Rules of Evidence provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

As our Court of Appeals has repeatedly noted, Rule 702 embodies three requirements: qualification, reliability, and fit. Pineda

---

1.(...continued)
Waste Management Authority are third-party defendants sued by defendants VIALCO and Lockheed and former defendant Century for contribution.

v. Ford Motor Co., 520 F.3d 237, 244 (3d Cir. 2008). The plaintiffs do not argue that Dr. Ginn's opinions are unreliable.

An expert is qualified if he "possess[es] specialized expertise." Schneider ex rel. Estate of Schneider v. Fried, 320 F.3d 396, 404 (3d Cir. 2003). This does not necessarily require formal credentials, as "a broad range of knowledge, skills, and training qualify an expert," and may include informal qualifications such as real-world experience. In re Paoli R.R. Yard PCB Litig., 35 F.3d 717, 741 (3d Cir. 1994). The qualification standard is a liberal one, and an expert may be sufficiently qualified under Rule 702 even if "the trial court does not deem the proposed expert to be the best qualified or because the proposed expert does not have the specialization that the court considers most appropriate." Holbrook v. Lykes Bros. S.S. Co., 80 F.3d 777, 782 (3d Cir. 1996).

As for "fit," expert testimony must also "assist the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702. Thus, to "fit," such evidence must bear some relation to the "particular disputed factual issues in the case." United States v. Downing, 753 F.2d 1224, 1237 (3d Cir. 1985). Accordingly, this factor has been described as one of relevance. Daubert, 509 U.S. at 591; Paoli, 35 F.3d at 745 & n.13.

## II.

Dr. Ginn was retained by Lockheed "to evaluate the available information on ecological conditions at the Alumina

site and the potential injuries to terrestrial resources that are alleged by the Plaintiffs."  His opinions respond to those of plaintiffs' experts James V. Holmes, Joshua Lipton, Constance L. Travers, Bradley Sample, and Brian Daley.

Dr. Ginn received a B.S. in Fisheries Science from Oregon State University in 1968, an M.S. in Biological Sciences from Oregon State University in 1971, and a Ph.D. in Biology from New York University in 1977.  He is a Principal Scientist in the EcoSciences practice at Exponent, a scientific and engineering consulting firm, where he specializes in natural resources damage assessment and ecological risk assessment.  He has provided support for more than 30 natural resources damages assessments, which included both terrestrial and aquatic assessments, and 17 ecological risk assessments, involving both terrestrial and aquatic environments.  He has served on a number of scientific advisory committees for several federal government programs.  The EPA and state agencies have engaged him as a consultant concerning the design of ecological monitoring programs and the interpretation of monitoring data.  He has also published a number of scientific papers concerning techniques for conducting environmental assessments and co-authors an annual literature review of marine pollution studies.

The plaintiffs make two arguments in their motion to exclude Dr. Ginn's testimony.  First, they maintain that Dr. Ginn is not qualified to opine about flora on St. Croix.  Dr. Ginn's opinions regarding flora are based on his personal observations

when he visited the alumina refining facility.  He rebuts the opinions of plaintiffs' experts who argue that the flora there is sparse and instead opines that a mixture of plants is growing to a certain height and continuing to grow.  As noted above, Dr. Ginn holds a masters degree and a Ph.D. in biology.  He has thirty years of experience involving natural resource damage assessments and ecological risk assessments.  Indeed, Dr. Ginn testified in his deposition:

> I am certainly not an expert on the flora of
> the Caribbean area, but I -- I believe that I
> have sufficient experience in ecology to see
> what was once an area that was once devoid of
> plants, and at the present time I see a
> mixture of plants that have grown there.

Although Dr. Ginn, as a non-lawyer, says he is not an "expert" in the flora of the Carribean, he is qualified, based on his experience in ecology and his education in biology, to describe his personal observation that a mixture of plants is growing to a certain height at the alumina refining facility in a way that would "assist the trier of fact to understand the evidence or to determine a fact in issue."  Fed. R. Evid. 702.

As noted above, the qualification standard is liberal, and an expert may be sufficiently qualified even if "the trial court does not deem the proposed expert to be the best qualified or because the proposed expert does not have the specialization that the court considers most appropriate."  Holbrook, 80 F.3d at 782.  Indeed, in Holbrook, our Court of Appeals accepted more general qualifications of an expert in holding that a treating

physician did not have to practice a particular specialty in order to testify concerning certain matters.  Id.  The plaintiffs are, of course, welcome to question Dr. Ginn on his expertise regarding flora in the Caribbean.

The plaintiffs' second argument is that Dr. Ginn's opinions that distinguish between injuries to natural resources caused by "hazardous substances," a term defined in the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. § 9601(14), and injuries caused by other effects should be excluded because no CERCLA claims concerning terrestrial resources remain in the case with respect to the alumina refining facility.  Rather than "hazardous substances," the plaintiffs' experts use the term "contaminants."  They do not explain the differences between hazardous substances and contaminants, and the terms do not appear to be substantively different.  In his deposition, Dr. Ginn explained that he has used the term "hazardous substances" in the many natural resource damage assessments in which he has participated, whether or not they involved cases under CERCLA.  Dr. Ginn's use of the term "hazardous substances" rather than the term "contaminants" does not make his testimony irrelevant to this action.  Both parties can ensure at trial that the experts specify the substances to which they refer.

For these reasons, we will deny the motion of the plaintiffs to exclude Dr. Ginn's testimony.